**Salem**

SAMUEL REED CARTER, III

v.

SUZANNE PARKER CARTER THORNHILL

and

SUZANNE PARKER CARTER THORNHILL

v.

SAMUEL REED CARTER, III

Nos. 2238-93-3 and 2252-93-3

Decided January 17, 1995

COUNSEL

Charles B. Phillips (Phillips, Doherty & Swanson, on brief), for Samuel Reed Carter, III.

Frank K. Friedman (William B. Poff; Diana M. Baun; Woods, Rogers & Hazlegrove, on briefs), for Suzanne Parker Carter Thornhill.

OPINION

**ELDER, J.**—Suzanne Parker Carter Thornhill (mother) and Samuel Reed Carter, III (father) each appeal the trial court's revised child support order. Mother contends the trial court erred in (1) not awarding her forty-five percent of the medical expenses that mounted during the pendency of the case; and (2) denying her request that father pay her attorney's fees and costs. Father contends the trial court erred in (1) retroactively modifying the child support order; (2) ordering him to pay mother's personal costs incurred during daughter's illness; (3) ruling that the extraordinary medical expenses incurred by dependent daughter were medically necessary; (4) fixing his gross income; and (5) denying his request that mother pay his attorney's fees and costs. For the following reasons, we affirm in part, reverse in part, and remand.

I.

BACKGROUND

The medical expenses necessitating the revised support order resulted from the catastrophic injuries incurred by the divorced parties' daughter on March 29, 1991. On that day, the sixteen-year-old's car hydroplaned on a wet road, skidded off a bridge, and submerged in a creek. Daughter was rushed to Roanoke

Memorial Hospital for treatment, where she arrived in a comatose state. Daughter was kept at that hospital until June 5, 1991, at which point she was discharged to the DuPont Institute in Wilmington, Delaware on the recommendation of her treating physician. At DuPont, daughter began arduous rehabilitation, which resulted in physical improvement. Because DuPont specializes only in short-term rehabilitation, after three months daughter was transferred to New Medico in Canonsburg, Pennsylvania, where she continued to show slight improvement. Several weeks later daughter was again transferred, this time to Health South's Kingsport, Tennessee facility, much closer to mother's Roanoke home and new family. Finally, daughter was moved to a nursing home in Roanoke in March 1992 when it was clear that she was making no further medical progress. Daughter died on August 10, 1993, before the trial court's final order was issued.

On February 18, 1992, father filed a petition for modification of support and attorney's fees, asking the circuit court to order child support according to the child support guidelines of Code § 20-108.2. Mother filed a response on March 24, 1992, asserting that the guidelines were inadequate based on daughter's grave medical condition and the expenses associated therewith. The trial court entered a final order on October 11, 1993, requiring father to pay mother $102,446.10, which represented forty-five percent of the stipulated medical expenses incurred for daughter's care, plus interest. Father was not ordered to pay for any of the nonstipulated medical expenses mother paid during the period November 18, 1992 through December 21, 1992. Included in the amount father was ordered to pay was forty-five percent of $9,561, which represented mother's personal travel, food, hotel, and miscellaneous expenses.

The trial court determined that father's adjusted gross monthly income was $16,164, based on father's 1991 tax return. Testimony showed that father transferred many of his assets to his current wife, some of which were admittedly transferred to avoid paying additional child support. The trial court denied both parties' requests for fees and costs and declined to order father to reimburse mother for any of the additional uncontested medical bills.

During the course of daughter's care at DuPont, both parents knew that father's insurance coverage for daughter was being terminated, as daughter had already received six months of intensive

treatment, beyond which treatment was deemed "unnecessary care" by the insurance company.[1] However, two attending physicians testified at trial that daughter's course of treatment was reasonable and necessary given her age and the injuries she suffered. Prior to the commencement of this suit, father made no specific objections to any of daughter's care or the cost of her treatment. However, father did on two occasions tell mother that his personal savings were low and that he "needed to go along with whatever Blue Cross and Blue Shield would recommend." During the course of this treatment, mother personally paid approximately two hundred fifty thousand dollars for medical care for daughter, as well as nursing home and other costs. In contrast, father paid only $2,200 for daughter's medical care and $225 per month in child support following daughter's accident.

## II.

### CHILD SUPPORT MODIFICATION

We hold that the trial court did not abuse its discretion when it ordered father to pay forty-five percent of daughter's previously-accrued medical expenses. The trial court's order was not a retroactive modification but a prospective award.

As a starting point, Code § 20-108 states:

> The court may, from time to time after decreeing as provided in § 20-107.2, on petition of either of the parents, or on its own motion or upon petition of any probation officer or superintendent of public welfare, which petition shall set forth the reasons for the relief sought, revise and alter such decree concerning the care, custody, and maintenance of the children and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require . . . .

> No support order may be retroactively modified, but may be modified with respect to any period during which there is a pending petition for modification, but only from the date that notice of such petition has been given to the responding party.

---

[1] At the time of this action, a suit against the insurer by father was pending in the United States District Court for the Western District of Virginia.

The facts of this case must be harmonized with these statutory directives. The record reveals the trial court did not order a retroactive modification of the support order but instead ordered a prospective award considering daughter's extraordinary medical needs and the money already expended by mother to meet those needs. As the trial court judge stated:

> I do not consider this Order to be a retroactive modification. It certainly does not increase any monthly child support payments made to [mother] for the period of time between the accident and the date the petition was filed. The Order deals only with who should pay and in what portion. . . .

The trial court reached its determination by starting with the presumptive guidelines set forth in Code § 20-108.2. After finding the gross monthly income of each parent, the trial court considered the guideline work sheet in the record. The work sheet prorated the expenses not covered by medical insurance over an eleven month period—February 1992, when the father's petition was filed, to December 1992, when the hearing was held. The trial court determined the percentages owed by each party toward daughter's support were fifty-five percent for mother and forty-five percent for father (proportional to each party's income).

The trial court then decided to deviate from the guidelines because mother had already paid the uninsured expenses and to award a lump sum payment rather than monthly payments, based upon circumstances of the case, which had changed since the petition was filed.[2] These circumstances included (1) daughter's removal to the Roanoke nursing home in March 1992 (which cost only $2,900 per month), and (2) $100,000 of daughter's independent funds from a trust fund received after her eighteenth birthday on December 25, 1992. In effect, during the pendency of the petition circumstances existed which warranted an increase and then changed to warrant a decrease. Thus, father was ordered to

---

[2] The trial court could have chosen to order increased support payments for the period beginning in February 1992, when father's petition was filed, until daughter's death in August 1993. If the trial court had strictly adhered to the presumptive work sheet guidelines, it could have ordered father to pay in excess of $10,000 per month until father requested a modification based on a change of circumstance or the child died. If payments in this amount had been ordered and continued until the child's death, the total would have far exceeded what father was ultimately ordered to pay as his lump sum support payment.

pay a lump sum of $102,446.10, which was forty-five percent of $218,097 (stipulated expenses paid by mother) and forty-five percent of $9,561 (miscellaneous personal expenses). The trial court also ordered father to pay $250 per month in continuing child support. We hold that because of the unique circumstances of this case the trial court did not abuse its discretion by making a lump sum award.

Noncustodial parents are not relieved of all obligations to a child other than court-ordered child support merely because they do not have physical custody. It is axiomatic that *parents* are responsible for the cost of necessities provided a child, including necessary medical expenses. *See Moses v. Akers*, 203 Va. 130, 132, 122 S.E.2d 864, 866 (1961); 14A *Michie's Jurisprudence*, Parent and Child § 18 (repl. vol. 1989). In this case, the trial court held that the expenses incurred were necessary. If mother had not paid the uninsured expenses, a third party could have obtained a judgment against father for the full amount. Father should not be able to avoid payment of his fair share simply because mother paid the bills.

Trial judges make decisions regarding child support based on the circumstances existing at the time of the proceeding. To hold that a noncustodial parent may not be held liable for any portion of catastrophic medical expenses incurred after the setting of child support and before a modification petition has been filed would produce illogical and unjust results. While the expenses in this case were incurred over a considerable period of time, a child could incur serious injuries and receive medical treatment costing tens of thousands of dollars in a matter of days.

As mother contends, the child support guideline work sheet instructions and the statutory provisions governing child support contemplate the possibility that already-incurred medical expenses will increase a supporting parent's obligation. Code § 20-108.1(B)(8) lists "extraordinary medical . . . expenses" as one factor justifying deviation from the Code's presumptive guidelines. Code § 20-108.2(D) states that "[f]or purposes of this section, extraordinary medical and dental expenses are uninsured expenses in excess of $100 for a single illness or condition." In order for this provision to have any significant meaning, it must contemplate payment for past expenses as well as continuing expenses. If this were not the case, a custodial parent would be limited to re-

covering a portion of extraordinary medical expenses only where that parent knew the expenses would exceed $100 in the future.

Because this is a case of first impression in Virginia, we look to similar cases from other jurisdictions for support. In *Ford v. Ford*, 100 Cal. Rptr. 817 (Cal. Ct. App. 1972), a California court held that an order requiring father to pay medical expenses for his child's appendectomy was not an invalid retroactive modification of accrued support payments. Instead, the court held the order was an exercise of reserved power to modify the child support order by reason of changed circumstances.[3] The court also added that "the primary concern being the welfare of the child, it is absurd to suggest that when the child became ill the mother should have first consulted her attorney instead of her doctor." *Id.* at 821-22. *See also Van Winkle v. Van Winkle*, 437 N.E.2d 358, 364 (Ill. App. Ct. 1982).

While parents should pursue court-ordered child support modifications based on extraordinary medical expenses as soon as possible after a child's injury or illness, the facts of this case do not justify penalizing mother for her inaction. First, in light of daughter's devastating injuries, the extraordinary care necessary for her treatment, and her transfers between various medical facilities around the country, mother was warranted in remaining at her daughter's bedside. Second, the trial court found, and the record supports, that at all times father had the financial resources to satisfy his share of daughter's medical expenses. Third, no evidence in the record suggests that mother's failure to petition the trial court sooner for support modification prejudiced father in any way.

## III.

## MEDICALLY NECESSARY TREATMENT

█ We hold the trial court did not abuse its discretion in determining that the treatment daughter received after father's insur-

---

[3] The statute in effect at the time, California Civil Code § 4700, was similar to Virginia Code § 20-112 and stated in pertinent part:

Any order for child support may be modified or revoked as the court may deem necessary, except as to any amount that may have accrued prior to the date of filing of the notice or motion or order to show cause to modify or revoke. The order of modification or revocation shall be made retroactive to the date of filing of the notice of motion or order to show cause to modify or revoke.

ance company refused to pay, from September 6, 1991 to March 27, 1992, was medically necessary. "A question raised by conflicting medical opinion is a question of fact." *Commonwealth v. Powell*, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986). The fact that there is contrary evidence in the record is of no consequence if credible evidence supports determinations of the finder of fact. *Wagner Enterprises, Inc. v. Brooks*, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). The burden is on the party alleging trial court error to show by the record that the judgment was erroneous, *see Reid v. Reid*, 12 Va. App. 1218, 1223, 409 S.E.2d 155, 158 (1991), or that the finding was plainly wrong and without evidence to support it by a preponderance of the evidence. Code § 8.01-680.

Ample and credible evidence in the record supports the trial court's finding that extraordinary and necessary medical expenses were incurred on behalf of daughter. Dr. Griffith, director of rehabilitation services at Roanoke Memorial Hospital, unequivocally testified that daughter's care in Roanoke, DuPont, and New Medico was reasonable and necessary. Dr. Griffith, along with Dr. Platt (daughter's physician at Health South), testified that daughter's care at Health South, which began on October 14, 1991, was reasonable and necessary. The record also establishes that the accepted standard of care for people with head injuries is one year of rehabilitative intervention. Finally, testimony reveals that daughter's individual circumstances warranted rehabilitation for at least one year.

## IV.

### MOTHER'S NECESSARY PERSONAL EXPENSES

Using the same standard of review as set forth in section III, we uphold the finding that the $9,561.10 in expenses mother incurred while caring for daughter at out-of-town facilities were necessary medical expenses incurred for daughter's benefit. "On appeal, the judgment of the trial court is presumed correct," *Wymer v. Commonwealth*, 12 Va. App. 294, 296, 403 S.E.2d 702, 704 (1991), and it is incumbent upon "the party alleging trial court error to show . . . that the judgment was erroneous." *Steinberg v. Steinberg*, 11 Va. App. 323, 326, 398 S.E.2d 507, 508 (1990).

The trial court was presented with expert testimony by Dr. Griffith, a board-certified rehabilitation specialist, that daughter needed family members present as a key component of her rehabilitation. The amount incurred by mother in the course of her travels to remain at daughter's side was $9,561. These expenses include hotel costs, phone bills, rental furniture bills, and a TV/VCR system equipped to allow daughter to view tapes of father's family for therapeutic purposes. The trial court did not abuse its discretion in finding that these expenses were extraordinary, necessary, and appropriate.

## V.

## NON-STIPULATED EXTRAORDINARY MEDICAL EXPENSES

We hold the trial court erred in not requiring father to pay forty-five percent of the non-stipulated, uninsured medical bills related to daughter's care that accrued during the pendency of this case. The petition for modification was filed on February 10, 1992, the hearing occurred on December 28, 1992, the trial judge held a hearing and orally rendered his opinion on May 25, 1993, daughter died on August 10, 1993, and the final order was entered on October 11, 1993. From November 18, 1992 to December 21, 1992, mother paid $7,406.01 in medical expenses. These expenses include payments to Interstate Collection Services (Roche Medical Lab) (for lab studies), Raleigh Court Healthcare (for daughter's basic care), and Powell Pharmacy (for daughter's medication). Father offered no testimony to contest the amount of these charges or their necessity. We hold that the same rationale that applies to the stipulated expenses applies to these expenses. We remand this aspect of the case for the trial court to enter an order consistent with this opinion.

## VI.

## DETERMINATION OF FATHER'S GROSS INCOME

This Court upholds the trial court's determination that father's gross income was $16,164 per month. Gross income must be determined under the provisions of Code § 20-108.2 as the first step in determining the proper amount of any child support order. Using father's 1991 individual tax return, which listed an annual gross income of $193,968, the trial court arrived at a figure of

$16,164 gross monthly income.

Father asserts three grounds to support his contention that his true gross income was far less than $16,164 per month. First, father testified that his 1992 income to date was only $54,000, as verified by his salary records (the hearing was held on December 28, 1992), and that in earlier years, excluding 1991, his income was less than $54,000. Second, father testified that over $400,000 of income was imputed to him for tax purposes in 1991 through a transfer of stock in the company operated by father to his current wife from her father; this money, however, was never expendable income. Third, the trial court's assertion that father could manipulate the company's earnings to his benefit is not clearly supported by the record.

The record contains evidence that a number of years prior to daughter's accident, father told a family friend that he was putting "everything into [his current wife's] name to make it appear he had nothing" in order to avoid any increase in child support. The record also established that father's salary was set by a board of directors consisting of father, his current wife, and his father-in-law.

It is apparent from the record that many assets over which father had control were transferred to his new wife. Father signed over thirty percent of his interest in Valley Curb & Gutter to his new wife; he signed a note agreeing to buy over $400,000 worth of stock in Sawyer Paving for his new wife from his father-in-law; he gratuitously transferred sixty-three shares of stock in Sawyer Paving, with a value of $135,000, to his new wife; at the time of the hearing, he paid one-half of the mortgage on a house that was solely in his new wife's name; and he admittedly transferred a valuable antique car to his new wife to avoid its being considered when the child support obligations were determined.

■ "The judgment of a trial court sitting in equity, when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Peple v. Peple*, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988). Credible evidence supports the trial court's decision, and it is not plainly wrong. Thus, we affirm the trial court's ruling that father's gross monthly income was $16,164.

## VII.

### ATTORNEY'S FEES AND COSTS

█ "An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." *Graves v. Graves*, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). Attorney's fees can be awarded in child support modification cases. *Edwards v. Lowry*, 232 Va. 110, 114, 348 S.E.2d 259, 262 (1986); *Antonelli v. Antonelli*, 242 Va. 152, 409 S.E.2d 117 (1991) (Supreme Court remanding case and directing award of attorney's fees upon dismissing father's child support petition).

We hold that the trial court did not abuse its discretion in denying an award of attorney's fees and costs to both parties. Each party raises arguments asserting that the opposing party needlessly went to great lengths to prolong litigation. However, no credible evidence in the record supports either party's assertion that his or her opponent was motivated by anything other than a legitimate concern for his or her daughter or the valid legal resolution of the conflicting substantive matters of this case.

Based on the foregoing, the judgment of the trial court is affirmed ordering father to pay a portion of stipulated medical expenses accrued prior to the filing of the modification petition, finding the daughter's treatment medically necessary, finding mother's personal expenses necessary for daughter's well-being, establishing father's gross income, and refusing to award attorney's fees. The decision of the trial court is reversed and remanded regarding the court's failure to order father to pay a portion of the non-stipulated medical expenses incurred by mother on behalf of daughter during the period of November 18, 1992 to December 21, 1992.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

Koontz, J., and Bray, J., concurred.