COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Overton
Argued at Alexandria, Virginia


CHARLES D. BENNETT

v.      Record No. 1364-95-4            OPINION BY
                                   JUDGE SAM W. COLEMAN III
COMMONWEALTH OF VIRGINIA,               JULY 16, 1996
 VIRGINIA DEPARTMENT OF SOCIAL SERVICES,
 DIVISION OF CHILD SUPPORT ENFORCEMENT,
 ex rel. AUDREY BENNETT


          FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                Robert W. Wooldridge, Jr., Judge


          Yvonne DeBruyn Weight (Eric Michael Weight;
          Weight & Weight, on briefs), for appellant.

          Anne Wren Garrett, Special Counsel (Betsy S.
          Elliott, Senior Special Counsel; Nancy J.
          Crawford, Regional Special Counsel, Division
          of Child Support Enforcement; James S.
          Gilmore, III, Attorney General; William H.
          Hurd, Deputy Attorney General; Siran S.
          Faulders, Senior Assistant Attorney General;
          Craig M. Burshem, Regional Special Counsel,
          on brief), for appellee.


     Charles D. Bennett appeals the trial court's order which

refused to modify his monthly child support obligation.  He

contends that the trial court erred by (1) requiring him to prove

a material change in his former wife's circumstances, in addition

to the change in his circumstance, before considering the issue

of imputing income to her, (2) not imputing income to her, (3)

not including in her gross income the social security and federal

housing benefits that she receives, and (4) retroactively

modifying his child support obligation for October 1994.  We find

no reversible error and affirm the trial court's order.

FACTS AND PROCEDURAL HISTORY

Charles D. Bennett (father) and Audrey Bennett (mother) married in 1983 and separated in 1988.  They had three children.  The three children have resided with their mother following the separation.  Isaac, the youngest child, suffers from Downs Syndrome.

Following the initial support order, the father filed a motion for abatement of support because his job was being terminated as a result of corporate downsizing.  At the modification hearing, the parties stipulated that they had no extraordinary medical expenses, no day care expenses, and no health insurance expenses.  They also stipulated that the mother receives $731 per month in Section 8 federal housing benefits[1] and $330 per month in Supplemental Security Income (SSI) benefits for Isaac's disability.[2]  At the time of the hearing, Isaac was attending school about three hours each weekday, but the court found he "require[d] a high level of monitoring and attention" from the mother.

As a consequence of the foregoing proceeding, the trial court reduced the father's monthly child support obligation to $170.  In that proceeding, the court refused to impute income to the unemployed father, but the judge stated in his letter opinion that he "will continue this matter for six months . . . to review

[1] See 42 U.S.C. § 1437f(a).

[2] See 42 U.S.C. § 1381.

- 3 -

(among other matters) [the father's] efforts to find employment."
Also, in that proceeding, the trial judge refused to include as part of the mother's gross income the social security benefits or federal housing benefits which she receives for Isaac's disability, and refused to impute income to the mother because she was "fully and properly occupied with the demands and special needs of Isaac."

Following that proceeding, on December 14, 1994, the father accepted permanent employment with MFSI, Inc. Just before doing so, he had earned, on a one-time basis during October 1994, $2,554.96 from temporary employment with Stephens Engineering Company.

On January 17, 1995, the mother filed a motion for review of child support, alleging a material change in circumstance. At a February 9, 1995 hearing, the parties stipulated that, after the mother had obtained approval in August 1994 from the Prince William County public school system to teach the children at home, she had removed the two oldest children from public school. They also stipulated that as of the date of the filing of the motion, Isaac was attending school all day for three days per week and was in day care the other two days.

By decree dated May 22, 1995, the trial court increased the father's monthly child support obligation to $841, based on the presumptive child support guidelines in Code § 20-108.2 for his gross monthly income of $2,933 and the mother's gross monthly

income of $100. The court also ordered that he pay "a one time adjustment" of $574 for child support based upon his October 1994 income. The trial court included the $574 with the $13,884.53 arrearage in child and spousal support found to be due. The court further found that "there has been no material change in [the mother's] circumstances such as to impute income to [her]."

### MATERIAL CHANGE OF CIRCUMSTANCE

A party moving to modify a support decree must prove a material change in circumstance following the last support order before the trial court is required to consider modifying the support award. See Thomas v. Thomas, 217 Va. 502, 505, 229 S.E.2d 887, 889-90 (1976). The change in circumstance also must warrant a modification of the support. Furr v. Furr, 13 Va. App. 479, 481, 413 S.E.2d 72, 73 (1992). The father contends that the trial court erroneously found "there ha[d] been no material change in [the mother's] circumstances" by virtue of Isaac being in school or day care the entire day, and therefore, erred by refusing to consider whether to impute income to the mother.

The mother's petition to increase support was based on the change in condition arising from the father's permanent employment. The trial court did not refuse to impute income to the mother because the mother had filed the petition or because the father had not alleged or proved a change in her circumstances. In fact, the judge stated that he considered the father's argument as "a motion to reconsider." The judge

- 5 -

thereafter ruled that the changed condition of Isaac being in school and day care did not warrant a finding that the mother was voluntarily unemployed. Accordingly, the court refused to impute income to her. Thus, the trial judge did not impose an additional burden on the father to prove changes in both his and the mother's circumstances and did not refuse to consider whether to impute income to the mother.

## IMPUTATION OF INCOME

In November 1994, the court refused to impute income to the mother because it found that she was "fully and properly occupied" with caring for Isaac. However, at the February 9, 1995 hearing, the parties stipulated that as of that date Isaac was spending three weekdays in school and the remaining two days in day care at state expense. The father contends, therefore, that because the mother is no longer required to remain at home to care for Isaac, the trial court erred by declining to impute income to the mother in calculating their respective child support obligations. Consequently, he argues that he is being required to pay a disproportionate amount of support for the children.

Both parents owe a duty of support to their minor children. Code § 20-61; Featherstone v. Brooks, 220 Va. 443, 448, 258 S.E.2d 513, 516 (1979). A trial court has discretion to impute income to either or both the custodial or noncustodial parent who is voluntarily unemployed, provided that income may not be

imputed to a custodial parent except when the child is in school or child care services are available. See Code § 20-108.1(B)(3); Sargent v. Sargent, 20 Va. App. 694, 703, 460 S.E.2d 596, 600 (1995) ("A trial court may impute income to the spouse receiving child . . . support under appropriate circumstances") (emphasis added). The trial court's decision to not impute income to the mother will be upheld on appeal unless it is "'plainly wrong or unsupported by the evidence.'" Id. at 703, 460 S.E.2d at 600 (quoting Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994)).

When the 1994 support order was entered, which did not impute income to the mother, the trial court found that Isaac attended school for approximately three hours each weekday and that "[h]e requires a high level of monitoring and attention." The mother's time and responsibility in caring for Isaac have changed. Isaac attends school and day care all day each weekday. Although the evidence does not show the frequency or extent to which Isaac's mother must take him home from school or day care or respond to his problems, the mother's counsel avowed that

> [s]ometimes [Isaac] doesn't respond well to [the instruction and care he is given at school] and his mother has to go to the school and intervene or be with him. When he goes to day care, if he can't sustain the day care situation she has to be there and intervene or take him home.

In Hamel v. Hamel, 18 Va. App. 10, 13, 441 S.E.2d 221, 223 (1994), we held that the trial court erred by refusing to impute

- 7 -

income to the noncustodial parent who had voluntarily quit her job.  In Brody v. Brody, 16 Va. App. 647, 650-51, 432 S.E.2d 20, 22-23 (1993), we held that the trial court erred by not imputing income to the noncustodial parent who voluntarily left her job to stay home and care for a child from another marriage.  A custodial parent has no less responsibility to provide support to a minor child than does the noncustodial parent.  Thus, the trial court shall impute income to a custodial parent who is voluntarily unemployed or underemployed where the age of the child and circumstances permit the custodial parent to be gainfully employed.  Code § 20-108.1(B)(3).

The facts here are distinguishable from those in Hamel and Brody.  Here, the mother has custody of a profoundly disabled child who "requires a high level of monitoring and attention." She did not voluntarily leave a job to assume this responsibility.  Although Isaac is in school and day care each weekday, the mother has to be available to respond to his needs or to take him home on occasion.  Although the evidence does not show the frequency and extent to which the mother is called to take Isaac out of school or day care, Isaac is profoundly disabled and only recently had his school days and day care extended beyond three hours.  The trial judge was familiar with Isaac's condition and previously had found that he required a high level of monitoring and attention even when Isaac was in school only three hours each weekday.

The father introduced no evidence to show the availability of a job that would tolerate absences or leaving on unscheduled intervals.  Furthermore, after Isaac comes home each day, the mother must devote her full time and attention to caring for him. Although the mother cannot absolve herself of the legal obligation to support her dependent children by voluntarily home schooling them, and thereby effectively removing herself from the labor market, the trial judge did not abuse his discretion by considering that in addition to caring for a profoundly disabled child, the mother is home schooling two other children.

Furthermore, the mother has not worked for over ten years and no evidence was introduced regarding the availability of jobs for her or the amount of income she could earn.  See Sargent, 20 Va. App. at 704, 460 S.E.2d at 600-01 ("No evidence was presented about the availability of a factory position or the hours or shifts that would be required").  The party contending that income must be imputed is required "to produce evidence that [is] sufficient to 'enable the trial judge reasonably to project what amount could be anticipated' had the mother [procured] employment."  Brody, 16 Va. App. at 651, 432 S.E.2d at 22 (quoting Hur v. Div. of Child Support Enforcement ex rel Klopp, 13 Va. App. 54, 61, 409 S.E.2d 454, 459 (1991)).

On these facts, the trial judge did not abuse his discretion by declining to impute income to the mother.

### SSI AND FEDERAL HOUSING BENEFITS

Code § 20-108.2(C) defines "gross income" broadly for purposes of calculating child support.  "'[G]ross income' shall mean all income from all sources."  Id.  However, "gross income" does "not include benefits from public assistance programs as defined in § 63.1-87, federal supplemental security income benefits, or child support received."  Id.  "'Assistance' and 'public assistance' mean and include aid to dependent children, auxiliary grants to the aged, blind and disabled, medical assistance, food stamps, general relief, fuel assistance, and social services."  Code § 63.1-87.  The father contends that the social security and federal housing benefits the mother receives do not fall within the exception in Code § 20-108(C) to "gross income."

In Whitaker v. Colbert, 18 Va. App. 202, 205, 442 S.E.2d 429, 431 (1994), on which the father relies, we held that social security benefits received by a parent for a personal disability are income for purposes of Code § 20-108.2.  See also Commonwealth v. Skeens, 18 Va. App. 154, 158, 442 S.E.2d 432, 435 (1994) ("The payment of money to the child's custodian in the form of Social Security payments is an indirect payment from the obligor parent for which the parent should receive credit").  The father's reliance on Whitaker is misplaced because the father is not the disabled party.  In Whitaker, we stated that

> [t]he social security benefits received by
> the children are not gratuities, but are
> entitlements earned by [the parent] through
> his earlier employment.  They are a
> substitute for his lost ability to provide

- 10 -

for the children through the fruits of future employment.

18 Va. App. at 205, 442 S.E.2d at 431. Here, Isaac's benefits are not based upon the father's future employment and they do not substitute for the father's loss of earnings or support.

Although the parents' income is taken into account in determining a disabled child's eligibility and amount of benefits under the SSI program, the primary purpose of the program is to provide special assistance to disabled children in low-income households. See H.R. Rep. No. 231, 92d Cong., 2d Sess., reprinted in 1972 U.S.C.C.A.N. 4989, 5133-34. "SSI benefits received by a disabled child are intended to supplement other income, not substitute for it . . . [and] the noncustodial parent's child support obligation is not impacted by the receipt of SSI on the behalf of a disabled child." Kyle v. Kyle, 582 N.E.2d 842, 846 (Ind. Ct. App. 1991). Accordingly, the father is not entitled to a credit or reduction in his child support obligation as a result of the SSI benefits the mother receives for Isaac's disability. See Code § 20-108.2(C) (providing that gross income does not include "federal supplemental security income benefits"); see also Lovett v. Lovett, 428 S.E.2d 874, 876 (S.C. 1993) (holding that "Husband was not entitled to offset his support obligation by the amount of Social Security benefits awarded children as a result of [Wife's] disability").

Like SSI benefits, Section 8 federal housing benefits are also supplemental in nature because they are intended to provide

special assistance to low-income families.  See 42 U.S.C. § 1437f(a) ("For the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing, assistance payments may be made with respect to existing housing in accordance with the provisions of this section"); 24 C.F.R. § 880.101(a)(1).  Therefore, we hold that the federal housing benefits the mother receives qualify as "public assistance" under Code § 63.1-87, and that the trial court did not err by declining to include the SSI benefits and the housing benefits in the mother's gross income.

### OCTOBER 1994 INCOME

The trial court ordered that the father's child support obligation shall include a "one time adjustment of $574.00" for income he earned during October 1994 "on which he paid nothing for the support of his family."  Accordingly, the court included that amount in the total arrearage of $14,458.53 as of February 1, 1995.  The father contends that the court exceeded its authority by retroactively modifying the support order as it applied to the month of October 1994.  He argues that the past support obligation, which included October 1994, was vested and fixed by judgment.

A trial court may not retroactively modify a child support decree to cancel a support arrearage or to relieve a parent of an accrued support obligation.  Cofer v. Cofer, 205 Va. 834, 838-39 140 S.E.2d 663, 666-67 (1965); Taylor v. Taylor, 10 Va. App. 681,

683-84, 394 S.E.2d 864, 866 (1990).  Past due installments become vested and are not subject to change.  <u>Taylor</u>, 10 Va. App at 683, 394 S.E.2d at 865-66.  A court may only modify a support order to be effective prospectively.  <u>Id.</u>  The order may be made effective "with respect to any period during which there is a pending petition for modification, but only from the date that notice of such petition has been given to the responding party."  Code § 20-108.  The court may modify its support order upon motion of any party in interest or upon its own motion.  <u>Id.</u>  We hold that the prohibition announced in <u>Cofer</u> against retroactive modifications to <u>relieve</u> support obligations applies with equal force to prevent a trial court from retroactively modifying its support order to <u>increase</u> a party's past support obligation.

We do not, however, view the trial court's one time award of $574 as a retroactive modification or increase in a past due or vested amount of support.  Rather, we view the trial court's award, which was predicated on its own motion pursuant to the authority granted by Code § 20-108, as ordering the father to pay on a one time basis, an amount based on recent earnings as part of his current support obligation.  The fact that the court's award was based on past earnings does not render it a modification of a prior order or award or prevent the court from making a one-time lump sum child support award when the circumstances so justify.  <u>See</u> <u>Carter v. Thornhill</u>, 19 Va. App. 501, 507, 453 S.E.2d 295, 299 (1995).  Frequently, a one-time

past event, such as an inheritance or liquidation of an asset or other windfall that has already occurred, will justify a prospective one-time award of support. Such an award or modification operates prospectively, not retroactively. By declaring the amount due and payable and including it in the arrearage, the court did not retroactively modify its support order. See Dziarnowski v. Dziarnowski, 14 Va. App. 758, 762, 418 S.E.2d 724, 726 (1992) ("When a trial court reaches the correct result for the wrong reason, its judgment will be upheld on appeal"). Therefore, we affirm the trial court's order establishing a one-time monthly child support obligation of $574.

For the foregoing reasons, we affirm the trial court's order.

Affirmed.

Benton, J., concurring.

I join in the opinion except a portion of the section styled Imputation of Income.

The evidence established that the youngest child, who is disabled, attends school and day care all day each weekday.  I find nothing in the record that established that the mother has any greater need to visit the youngest child's school than any other working parent who has children in school.  No evidence proved either the frequency of her visits or the length of her visits to the school.

The evidence further established that the mother voluntarily removed the two older children from the public school system to "home school" them herself.  I believe that the record proved that the mother's unavailability to seek employment was based solely upon her voluntary decision to "home school" two of her children.  In deciding to remove the two older children from school, she voluntarily chose "the convenience or personal preference . . . to remain unproductive . . . so as to avoid support obligations."  Hur v. Virginia Dep't of Social Servs., 13 Va. App. 54, 60, 409 S.E.2d 454, 458 (1991).  Thus, I would hold that her decision to "home school" her children was a voluntary decision taken "to the detriment of [her] support obligations to the children."  Brody v. Brody, 16 Va. App. 647, 651, 432 S.E.2d 20, 22 (1993).

I concur in the judgment, however, because I agree with the

majority's additional rationale that the father failed to establish that the mother, who has been unemployed since 1985, could find employment. The statement of facts recites that "[n]either party presented evidence as to employment available to [the mother] given her skills and experience." Thus, I would hold, not that the evidence failed to prove a material change in circumstance, but that the evidence failed to prove the availability of employment and was insufficient to "enable the trial judge reasonably to project what amount [of income] could be anticipated" if employment was available to the mother. <u>Hur</u>, 13 Va. App. at 61, 409 S.E.2d at 459. Accordingly, I would uphold the trial judge's ruling with respect to imputed income only because, as he found, "there was insufficient evidence of any income that could be imputed to [the mother]."

Except as stated above, I concur in the remainder of the opinion and would affirm the judgment.