## CIRCUIT COURT OF LOUDOUN COUNTY

Timothy W. Callahan

   v.

Tammy P. Crupper,
f/k/a Tammy P. Callahan

August 6, 1997

Case No. (Chancery) 13307

BY JUDGE JAMES H. CHAMBLIN

On March 5, April 14, and July 15, 1997, the Court heard evidence on various motions of the parties. At the conclusion of the hearing on July 15, 1997, the following matters were taken under advisement:

1. The Motions of both parties to review and modify child support.

2. The Rule to Show Cause against Mr. Callahan for his alleged failure to comply with the divorce decree entered on September 25, 1991, by failing to pay one-half of the non-covered medical expenses incurred on behalf of the minor children; and

3. Ms. Crupper's request for an award of attorney's fees.

Each issue is addressed below.

### Child Support

The presumptive amount of child support for the parties' two children is calculated as follows:

| | |
|---|---|
| Father's Monthly Gross Income | $3,467.00 |
| Mother's Monthly Gross Income | $2,816.00 |
| Combined Monthly Gross Income | $6,283.00 |
| | |
| Father's Percentage Share of Income | 55.18% |
| Mother's Percentage Share of Income | 44.82% |
| | |
| Basic Child Support Obligation from Guidelines | $1,228.00 |
| Work-related Child Care Expenses | $ 400.00 |
| Total Child Support Obligation | $1,628.00 |
| | |
| Father's Child Support Obligation | $ 898.33 |
| Mother's Child Support Obligation | $ 729.67 |

Therefore, the presumptive amount of child support owed by Mr. Callahan to Ms. Crupper is $898.33 per month.

Mr. Callahan's gross monthly income is based on his current annual salary of $41,604.00 as a professional firefighter for the Metropolitan Washington Airports Authority. No evidence was presented from which a determination can be made of Mr. Callahan's present income, if any, from his removal business.

Ms. Crupper asks the Court to impute income to Mr. Callahan because (1) his income as a firefighter was $47,709.64 in 1996 and $44,374.49 in 1995 and (2) of his removal business.

Mr. Callahan clearly explained that his firefighter income in 1995 and 1996 was more than his current salary because of a large amount of overtime in those two years mostly for recertification procedures as an emergency medical technician and as an airport firefighter. He testified that these procedures and the overtime would not occur this year. He has explained the

difference in annual incomes. No additional firefighter income is imputed to Mr. Callahan. He is not under-employed as a firefighter. He works full-time as a professional firefighter.

The parties were divorced by decree entered September 25, 1991. By a consent order entered September 27, 1995, the parties agreed to child support payments from Mr. Callahan to Ms. Crupper of $939.77 per month starting September 1, 1995. At that time, Mr. Callahan was not only working as a full-time professional firefighter but also he was the sole proprietor of his removal business.

Mr. Callahan's 1995 income was:

(1) $44,374.49 as a firefighter; and

(2) $5,617.51 as profit, based on gross income of $32,400.00 less expenses of $26,782.49 for the removal business, as shown on Schedule C of his 1995 federal income tax return (see Defendant's Exhibit 2).

On this total income of $49,992.00, he agreed to pay child support of $939.77 per month.

There is no evidence of Ms. Crupper's 1995 income.

Both parties filed child support modification motions. Mr. Callahan filed his on September 11, 1996, and Ms. Crupper filed hers on January 17, 1997. With cross-motions, there is no issue of a material change of circumstances from September 1995. However, the income history of Mr. Callahan needs to be examined as to the issue of his removal business and possible imputation of income from it.

As a general rule, a court should not impute to a person income from more than one job. *Cochran v. Cochran*, 14 Va. App. 827, 830 (1992). In determining whether to impute such income, a court must look at the peculiar circumstances of each case. *Cochran* involved a father with a history of earning substantial sums throughout the marriage from a second job, especially during the summer months when he did not have to work as a teacher. The Court of Appeals ruled in *Cochran* that the trial court erred in not considering what the father could have been reasonably expected to earn outside normal hours based upon his recent work history.

Mr. Callahan did start his removal business in July 1992, the year after the parties were divorced. Evidence of the business income and expenses was presented for only 1994 and 1995. Nothing was presented to allow the Court to establish Mr. Callahan's income from the business in 1996 or 1997. At the end of the testimony, Mr. Callahan stated that the business "no longer operates."

Mr. Callahan works a regular, full-time job and has done so for sixteen years. There is no indication that he is voluntarily under-employed as a

professional firefighter. Ms. Crupper offered nothing to dispute Mr. Callahan's testimony that he did not have as much time to devote to the business this year as he did in 1996.

The burden is upon the party contending that income should be imputed to produce evidence that is sufficient for the Court to project reasonably the amount that could be anticipated had the other party procured the income or employment. *Bennett v. Commonwealth of Virginia, DSS, DCSE*, 22 Va. App. 684 (1996).

The opinions of Ms. Crupper's experts as to Mr. Callahan's business expenses in 1994 and 1995 would be persuasive if there was evidence of the present circumstances of the business. She presented no evidence or expert opinion upon which to determine any current reasonably-expected income from the removal business. In light of Mr. Callahan's unrefuted testimony that he does not have the time this year to devote to the business that he did in 1996, it cannot be implied or inferred that he would have the same gross income in 1997 as in 1995 (not to mention that there is no evidence of his gross income in 1996).

Where a parent has a regular full-time job with a reasonable income (Mr. Callahan is at the top of his salary scale), the burden is especially appropriate on the other parent to prove an exception to the general rule of not imputing income from more than one job. Ms. Crupper presented no evidence of the actual gross income or expenses of Mr. Callahan's removal business in 1996 or 1997. She presented no evidence of gross income or expenses that could be reasonably expected. She presented no evidence of the current nature and amount of removal business available in the northern Virginia area, how much time Mr. Callahan has had to devote to the business considering his full-time job, and the effect of incorporation (Mr. Callahan testified he incorporated the removal business in February, 1997) upon his income.

No income will be imputed to Mr. Callahan for his removal business because Ms. Crupper has failed to produce sufficient evidence to allow the Court to make a reasonable projection of income from the removal business.

The work-related child-care expense is as argued by Ms. Grizzle. It is apparently based upon $100.00 per week after school care for both children and a flat four weeks per month. It is substantially less than $185.00 per week for both children for child-care during the summer.

Child support is modified to $900.00 (a rounded-off figure) per month effective August 1, 1997. As with the prior order, it can be paid at the rate of $450.00 on the 1st and $450.00 on the 15th if requested by Mr. Callahan.

*Rule*

In the final decree of divorce entered herein on September 25, 1991, it is provided that Ms. Crupper shall provide health insurance coverage for the minor children and that the parties "shall share equally non-covered medical, eye care, dental, orthodontic, etc., expenses of the children so long as there is an obligation for child support."

In her petition for the rule to show cause, Ms. Crupper alleged that Mr. Callahan has willfully refused to pay one-half of the non-covered expenses and is in arrears in the amount of $703.70. She testified to the same arrearage at the hearing.

Mr. Callahan does not challenge the amount of the arrearage as asserted by Ms. Crupper except to the extent that he never saw the bills until during discovery and that Ms. Crupper went outside her insurance plan to secure medical expenses that were not fully covered by her insurance.

I do not accept Mr. Callahan's failure to pay because he says he never saw the bills until during discovery. This proceeding has been pending for quite some time. He has known the amount claimed by Ms. Crupper for at least four months but still has not paid. Failure to see the bills is no excuse now.

I find from the evidence presented that Mr. Callahan was fully advised of why Ms. Crupper had to go outside her medical insurance plan to get medical services for the children. Mr. Callahan presented no evidence that Ms. Crupper could have gotten the same services within the plan. He presented no evidence to support a finding that Ms. Crupper failed to maintain adequate medical insurance coverage or that she was at fault in going outside the plan. She adequately explained the need for the out-of-plan referrals, and Mr. Callahan offered nothing to rebut it. The evidence clearly shows that Ms. Crupper attempted to keep Mr. Callahan fully advised of the non-covered medical expenses. Ms. Crupper cannot be faulted, and Mr. Callahan cannot be rewarded because he refused to accept certified mail from her. There is certainly no court-ordered requirement that all matters concerning the children's medical expenses must go through counsel. Mr. Callahan may have preferred to use counsel, but he cannot escape willful contempt by refusing to act except through counsel. It is not a defense that this is a matter that could have been easily resolved by counsel because (1) there is no evidence that it could have been so resolved, and (2) if it could have been, they why was it litigated?

Mr. Callahan is in willful contempt (he presented no evidence of an inability to pay) for failure to pay $703.70 in children's medical expenses not

covered by insurance. He is ordered to pay the sum of $703.70 to Ms. Crupper on or before September 5, 1997.

### *Attorney's Fees*

After a review of Ms. Grizzle's attorney's fee affidavit (Defendant's Exhibit 22), I find that a fee of $700.00 is reasonable for bringing the Rule considering all of the circumstances of this case. Therefore, Mr. Callahan is ordered to pay to Ms. Grizzle as attorney's fees the sum of $700.00 on or before September 5, 1997.

No further attorney's fees are awarded. Both parties brought motions for a child support modification. Mr. Callahan's custody motion was not frivolous or made in bad faith. He simply did not prevail.