UNPUBLISHED

*VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **19th** *day of* **September, 2023**.

Pamela Kay Humphries, Appellant,

against Record No. 0877-22-2
Circuit Court No. CL21J01831-00

Robert Brian Buchanan, et al., Appellees.

Upon a Petition for Rehearing En Banc

Before the Full Court

On September 5, 2023 came the appellant, by counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on August 22, 2023, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the petition for rehearing *en banc* is granted in part with respect to the following issue:

The circuit court erred as a matter of law when it concluded that Noah Buchanan's Supplemental Security Income disability benefits should be applied to reduce his father's child support obligation.

The appeal of that issue is reinstated on the docket of this Court. The mandate previously entered herein is stayed pending the decision of the Court *en banc*.

The remainder of the petition for rehearing *en banc* is denied.

The parties shall file briefs in compliance with the schedule set forth in Rule 5A:35(b).

A Copy,

Teste:

A. John Vollino, Clerk

By: *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

COURT OF APPEALS OF VIRGINIA

Present: Judges Ortiz, Chaney and Senior Judge Haley
Argued at Richmond, Virginia


PAMELA KAY HUMPHRIES

MEMORANDUM OPINION* BY
v.      Record No. 0877-22-2      JUDGE VERNIDA R. CHANEY
AUGUST 22, 2023

ROBERT BRIAN BUCHANAN, ET AL.


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Edward A. Robbins, Jr., Judge

Robert W. Loftin (J. Tracy Walker IV; Jonathan T. Tan;
McGuireWoods LLP, on brief), for appellant.

No brief or argument for appellees.


Pamela Kay Humphries (mother) appeals the circuit court's judgment reducing Robert Brian

Buchanan's (father) child support obligation. Mother contends that the circuit court erred in

(1) applying their disabled child's federal Supplemental Security Income ("SSI") disability benefits

to reduce father's child support obligation, (2) finding a requisite material change in circumstances

to support a modification of the previous child support order, without evidence to support this

finding, and (3) finding that father rebutted the presumption of correctness of the statutory child

support guidelines and deviating from the guidelines.

"On appeal, we presume the judgment of the trial court is correct . . . ." *Bay v.*

*Commonwealth*, 60 Va. App. 520, 528 (2012). "The burden is upon the appellant to provide [the

appellate court] with a record which substantiates the claim of error. In the absence [of a

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

sufficient record], we will not consider the point." *Dixon v. Dixon*, 71 Va. App. 709, 716 (2020) (alterations in original) (quoting *Robinson v. Robinson*, 50 Va. App. 189, 197 (2007)).

This Court cannot address mother's assignments of error because mother failed to file a transcript, or a written statement of facts in lieu of a transcript, of the October 15, 2021 trial in the circuit court. *See* Rule 5A:8(a) (requiring transcripts to be filed no later than 60 days after entry of the trial court's final order). Because this Court cannot resolve mother's assignments of error without considering the evidence underlying the circuit court's factual findings and computation of child support, the missing trial transcript is indispensable in this appeal. *See* Rule 5A:8(b)(4)(ii) ("When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered."). *See also Smith v. Commonwealth*, 32 Va. App. 766, 772 (2000) (holding that "[t]his Court has no authority to make exceptions to the filing requirements" for transcripts "set out in the Rules" (quoting *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986))).

Although mother timely filed a transcript of the January 14, 2022 hearing on her motion for reconsideration of the circuit court's October 15, 2021 *ore tenus* ruling, the January 2022 proceeding was a non-evidentiary hearing. As the circuit court noted in its March 3, 2022 opinion letter, "No testimony was provided, and no exhibits were admitted at the 14 January 2022 hearing." Therefore, the timely-filed transcript of the January 14, 2022 hearing does not provide the evidentiary record necessary to permit resolution of the issues raised in mother's assignments of error.

Because mother failed to ensure that the record contains a timely-filed transcript, or a written statement of facts in lieu of a transcript, necessary to permit resolution of her assignments of error, this Court affirms the circuit court's judgment. *See* Rule 5A:8(b)(4)(ii); *see also Smith*

*v. Commonwealth*, 281 Va. 464, 470 (2011) ("the failure to timely file the transcript . . . did not deprive the Court of Appeals of its active jurisdiction to proceed to judgment in the appeal," affirming the trial court's judgment).

*Affirmed.*

Ortiz, J., concurring in part, and dissenting in part.

I concur that we cannot consider Humphries' second and third assignments of error—that no evidence was presented to establish a material change in circumstances or to rebut the presumptive child support guidelines—as Humphries failed to timely file a transcript on appeal. But I dissent from the majority's decision that our Court cannot consider Humphries' first assignment of error—that the trial court erred when it deviated down from the child support guidelines and considered the minor child's Supplemental Security Income ("SSI") disability benefits an "independent financial resource"—as it presents a pure question of law.[1]

Furthermore, I would reverse the trial court's decision because under *Bennett v. Commonwealth*, 22 Va. App. 684 (1996), noncustodial parents are barred from receiving a child support credit for a disabled child's SSI income. Ignoring *Bennett*, the trial court relied instead on dicta from *Rinaldi v. Dumsick*, 32 Va. App. 330 (2000). To the extent the *Rinaldi* language is regarded as binding, I would affirm the trial court's judgment and encourage rehearing this case en banc, to resolve the tension between *Rinaldi* and *Bennett*.

---

[1] An appellate court does not sit to pass judgment on the "reasons of the court for its judgment" but simply the judgment, *see, e.g.*, *Perry v. Commonwealth*, 280 Va. 572 (2010). Our Supreme Court found a transcript was not indispensable to determine whether a motion to continue was improperly denied, because there was evidence that the motion was made, and denied, during the hearing. *Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 33 (2007). It should be noted that the record contains a transcript from the motion for reconsideration of the child support modification ruling. Furthermore, there is a record of how the trial court considered the legal issue, as well as what arguments were preserved.

Judicial dicta[2] are a court's opinion "on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision and therefore not binding even if it may later be accorded some weight." *Judicial Dictum*, *Black's Law Dictionary* (10th ed. 2014). The United States Supreme Court noted that dicta generally

> are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the Court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.

*Cohens v. Virginia*, 19 U.S. 264, 399-400 (1821). In practice, dicta may "range from binding to wholly unpersuasive." Professor Marc McAllister, *Dicta Redefined*, 47 Willamette L. Rev. 161, 162 (2011). "[W]e are not bound to follow our dicta in a prior case in which the point now at issue was not fully debated," *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006), or in which the legal rationale is erroneous, *see* McAllister, *supra*.

In *Rinaldi*, a noncustodial father sought a downward deviation of his child support obligation based on his adult disabled son's SSI benefits and part-time employment. 32 Va. App. at 332. The trial court refused to deviate down from the child support guidelines. *Id.* We affirmed, holding: "[t]he decision not to deviate from the guidelines is within the trial court's discretion and is to be determined upon . . . the totality of the circumstances in each case. We cannot say the trial court's decision was plainly wrong or without evidence to support it." *Id.* at

---

[2] Virginia distinguishes between "obiter dictum" and "judicial dictum." *See Jones v. Phillips*, 299 Va. 285, 301 (2020); *Harmon v. Peery*, 145 Va. 578, 583 (1926). Judicial "[d]icta are opinions of a judge which do not embody the resolution or determination of the court and, [are] made without argument or full consideration of the point . . . ." *Harmon*, 145 Va. at 583. But obiter dicta are even more tangential than judicial dicta. "*Obiter dicta* are such opinions uttered by the way, not upon the point or question pending, as if turning aside, from the main topic of the case to collateral subjects." *Id. Rinaldi*'s language constitutes judicial dicta.

337. However, the *Rinaldi* panel then chose to engage in a hypothetical: *could* the trial court have deviated down from the guidelines? Although it found that "the trial court *expressly declined* to deviate from the guidelines" and "did not make any finding . . . [that] the guidelines would be unjust or inappropriate," it theorized that the trial court "properly *could* [have] consider[ed] as an independent financial resource of the child both his SSI and his wages from part-time employment." *Id.* at 336 (emphases added). This tangential comment falls squarely in the definition of "judicial dictum." This statement was not essential to our holding in *Rinaldi*, would create an inter-panel tension issue with our holding in *Bennett*, and is legally problematic.

In *Bennett*, we held that a noncustodial father was "not entitled to a credit or reduction in his child support obligation as a result of the SSI benefits the mother receive[d] for [the adult child]'s disability," because gross income under the guidelines does not include federal SSI benefits. 22 Va. App. at 695; Code § 20-108.2. We noted that "SSI benefits received by a disabled child are intended to supplement other income, not substitute for it," when holding that a "noncustodial parent's child support obligation is not impacted by the receipt of SSI on the behalf of a disabled child." *Bennett*, 22 Va. App. at 694-95. This interpretation aligns with the legislative intent behind the SSI program—"that SSI benefits be paid only to the extent an individual's minimum income level is not being met from other sources." *Bormey v. Schweiker*, 695 F.2d 164, 168 (5th Cir. 1983) (citing H.R. Rep. No. 92-231, 92d Cong., 2d Sess.); *see Weiss v. Schweiker*, 519 F. Supp. 763, 765 (S.D.N.Y. 1981).

*Bennett* expressly barred noncustodial parents from receiving a child support credit for a disabled child's SSI income under Code § 20-108.2. Under *Rinaldi*, noncustodial parents would be allowed to circumvent *Bennett* by claiming that their disabled child's SSI income is not "gross income" under Code § 20-108.2 but, rather, an "independent financial resource" under Code § 20-108.1. *Rinaldi*, 32 Va. App. at 336. This distinction is artificial, inconsistent with

Congress's legislative intent surrounding the SSI program, and violative of public policy. Even *Rinaldi* recognized that "[t]here is nothing inherently unjust or inappropriate about making a father support his child, if he is able to do so, before looking to a government welfare program that is intended to supplement the resources of the needy." *Id.* at 337 (alteration in original). Effectively, *Rinaldi* would permit the exact noncustodial credit/reduction in child support that *Bennett* disallowed. And it would encourage absent parents to foist their legal obligations onto governmental programs for the needy.

Compounding the problem, the judicial dicta on which the trial court relied are legally problematic and, thus, unpersuasive. Review of the *Rinaldi* panel's opinion reveals that its dicta are based upon a cite to the Code—which does not support its claim—and an incomparable Kentucky case. In *Barker v. Hill*, 949 S.W.2d 896, 896 (Ky. Ct. App. 1997), the Kentucky court considered whether a disabled child's monthly SSI could be deducted from the father's child support obligations and held that it could. In coming to this decision, the Kentucky court stated:

> In determining whether application of the guidelines would be unjust or inappropriate, we believe that an appropriate circumstance to consider is the SSI received by the child as an independent financial resource. *Considering SSI in the child's name is consistent with considering social security benefits in the parent's gross income.*

*Id.* at 897 (emphasis added). This is because the Kentucky statute expressly includes both social security benefits *and supplemental security income* as gross income when calculating its child support guidelines award. *Id.* In other words, *Barker v. Hill* was decided this way because Kentucky sought to harmonize its interpretation of "gross income" and its interpretation of "independent financial resources."

But in Virginia, our statute states the opposite—"'[g]ross income' shall *not* include . . . [f]ederal supplemental security income benefits." Code § 20-108.2 (emphasis added).[3] Our statute is not comparable to the Kentucky statute. *Rinaldi*'s reliance on *Barker v. Hill* was thus misguided and incorrect. In fact, *Bennett* is more analogous to *Barker v. Hill* than *Rinaldi*; unlike *Rinaldi*, *Bennett* also sought to harmonize the statutes at issue.[4] Despite this, the trial court found *Rinaldi*'s distinction and incorrect reliance on Kentucky law to be binding.

Humphries and Buchanan are the divorced parents of N.B., a disabled person over the age of eighteen. Both parties stipulated that N.B. qualified for continued parental support beyond his eighteenth birthday under Code § 20-124.2. N.B. receives monthly SSI benefits of $700 per month. After hearing argument, the trial court permitted a downward deviation of Buchanan's child support obligation, due to N.B.'s SSI benefits. The trial court relied on our decisions in *Bennett* and *Rinaldi* and found that application of the standard child support guidelines would be unjust, as Humphries used part of N.B.'s SSI benefits to support herself and her children while providing full-time caregiving to N.B.

The trial court found that *Rinaldi*'s language was not dicta and would allow courts to consider the SSI benefits of a disabled child their "independent financial resources" under Code § 20-108.1. This determination undermines our prior holding in *Bennett*. *Bennett*, 22 Va. App. at 695. Although *Bennett* concerned gross income calculations and benefits received by the parent on behalf of a disabled adult child—rather than "independent financial resources" and benefits awarded directly to the disabled adult child—the distinction is nevertheless artificial. *Rinaldi* would permit different results for nearly identical financial situations. To read *Rinaldi*'s language as anything other than dicta creates inter-panel tension between *Rinaldi* and *Bennett*.

---

[3] This statutory language was identical when *Bennett* and *Rinaldi* were decided.

[4] Code §§ 20-108.1, 20-108.2.

*Rinaldi*'s language is unpersuasive judicial dictum.  It is not essential to its holding, it is legally suspect, and it is inconsistent with our holding in *Bennett*.  To the extent that other members of this Court would not find *Rinaldi*'s language to be dicta, this case should be heard en banc to remedy the conflict between *Rinaldi* and *Bennett*.  *Rinaldi* is a published panel case. *Bennett* is a published panel case.  *Rinaldi* should not be permitted to undermine *Bennett* without vetting by our Court en banc.  For these reasons, I dissent in part and concur in part.