COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Decker, Judges Beales, Huff, O'Brien, AtLee, Malveaux, Athey, Fulton, Ortiz,
          Causey, Friedman, Chaney, Raphael, Lorish, Callins and White
Argued at Richmond, Virginia


PAMELA KAY HUMPHRIES

                                                              OPINION BY
v.      Record No. 0877-22-2                          JUDGE DANIEL E. ORTIZ
                                                              MAY 7, 2024
ROBERT BRIAN BUCHANAN, ET AL.


                            UPON A REHEARING EN BANC

                  FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                            Edward A. Robbins, Jr., Judge

        Robert W. Loftin (J. Tracy Walker IV; Juliet B. Clark; Carson R.
        Bartlett; McGuireWoods LLP, on brief), for appellant.

        No brief or argument for appellees.


        Supplemental security income ("SSI") benefits received by a disabled child are not an

"independent financial resource[]" under Code § 20-108.1(B)(9) that may justify a reduction in a

parent's child-support obligation.  Rather, SSI benefits are *dependent* financial resources,

contingent on child-support payments received from a payor parent.  Thus, the circuit court erred

in reducing Robert Brian Buchanan's child-support obligation based on SSI benefits received by

his disabled adult child, N.  We therefore reverse the judgment of the circuit court and remand

for the entry of a new order of child support and calculation of retroactive support owed.

                                        BACKGROUND

        Pamela Humphries ("mother") and Robert Brian Buchanan ("father") divorced in 2012.

Father initially took physical custody of the parties' three minor children.  In 2017, upon father's

request, mother moved to Virginia and took sole physical custody of the children.  In 2018,

mother moved to reinstate child support. At the time, the parties' daughter, A., was still a minor, and mother provided full-time care to N., who was 18 but required intensive support due to his Down syndrome, autism, and obsessive-compulsive disorder.[1] The Chesterfield Juvenile & Domestic Relations Court ("JDR court") ordered father to pay $1,019 in monthly support for A. and N.

In 2020, the Division of Child Support Enforcement moved on father's behalf to reduce his child-support obligation.[2] The JDR court reduced father's monthly payment to $740. On appeal to the circuit court, the parties stipulated that based on mother's lack of income and father's monthly income of $4,749, the presumptive obligation for the two children was $1,103. Father requested a downward deviation from the guidelines on several grounds, including N.'s receipt of SSI benefits based on his disability. Following a hearing on October 15, 2021, the circuit court found N.'s SSI benefits to be an "independent financial resource[]" under Code § 20-108.1(B)(9) and reduced father's monthly support payments by $700, roughly the amount of N.'s SSI benefits. Upon mother's motion for reconsideration, the circuit court affirmed its holding that N.'s SSI benefits were an independent financial resource, but credited father for only about half of the SSI amount, for a monthly reduction of $336. Ultimately, the court ordered father to pay $766.50 in monthly support.

Mother appealed, asserting three assignments of error. She argued first that the circuit court erred by treating N.'s SSI benefits as an independent financial resource that could reduce father's child-support obligation. She also contended that there was no evidence of a material change in circumstances to support the change in child support and that father failed to rebut the

---

[1] Mother was appointed as N.'s legal guardian in August 2021.

[2] While some documents suggest that the motion was filed on behalf of mother, it appears based on testimony from the Division that this was a scrivener's error.

presumption that the child-support guidelines were correct. A panel of this Court found that it could not consider mother's appeal because she failed to file a transcript of the circuit court's October 15, 2021 hearing or a written statement of facts as required by Rule 5A:8. One judge concurred in part and dissented in part, noting that mother's first assignment of error raised a pure question of law that could be reviewed without a transcript. We granted mother's request for en banc review as to the first assignment of error, staying the panel's decision pending review by the full Court. We now reinstate the panel's mandate as to assignments of error two and three but vacate the panel's decision as to assignment of error one.

ANALYSIS

The sole issue before the en banc Court is whether the circuit court erred in finding that a disabled child's SSI benefits may be an "independent financial resource[]" under Code § 20-108.1(B)(9). The appeal turns on the interpretation of Code § 20-108.1(B), "a pure question of law that the Court reviews de novo." *Cleary v. Cleary*, 63 Va. App. 364, 369 (2014).[3]

I. A circuit court calculates child support by determining the guideline amount and then deviating if the guideline amount would be inappropriate or unjust.

Following divorce proceedings, a court may enter an order providing for "support of the minor children of the parties" or "support of a child over the age of 18" in some cases. Code § 20-107.2. Code § 20-124.2(C) permits support payments to qualifying adult children who are

---

[3] Because this assignment of error raises only a pure question of law subject to de novo review, we find that a transcript is not indispensable. *See Turner v. Commonwealth*, 2 Va. App. 96, 98-100 (1986). Mother preserved the issue of the treatment of N.'s SSI benefits, and the circuit court definitively ruled on the issue. Though the record also includes a detailed opinion letter laying out the court's thinking and a transcript of the hearing on the motion to reconsider, those are not necessary for our review. An appellate court does not sit to pass judgment on the "reasons of the court for its judgment" but simply the judgment. *See, e.g.*, *Perry v. Commonwealth*, 280 Va. 572, 579 (2010).

"severely and permanently mentally or physically disabled."[4]  "Statutory child support guidelines were designed 'to assure that both the child's needs and the parent's ability to pay are considered in determining the amount of support awards.'"  *Alwan v. Alwan*, 70 Va. App. 599, 605 (2019) (quoting *Milam v. Milam*, 65 Va. App. 439, 453 (2015)).  Ultimately, "[t]he court's paramount concern when awarding child support is the best interest of the children."  *Id.* (quoting *Stiles v. Stiles*, 48 Va. App. 449, 456 (2006)).

Child support is calculated in two steps.  First, following the guidelines in Code § 20-108.2, the court determines the presumptively correct amount of child support to award.  Second, if the court finds based on factors listed in Code § 20-108.1(B) that "the application of such guidelines would be unjust or inappropriate in a particular case," the court may deviate from the guidelines and set a different amount of child support.  If the court orders a deviation, the child-support amount "shall be determined by relevant evidence pertaining to the [listed] factors affecting the obligation, the ability of each party to provide child support, and the best interests of the child."  Code § 20-108.1(B).  One such factor is the "[i]ndependent financial resources of the child or children."  Code § 20-108.1(B)(9).  At issue is whether SSI benefits received by a child based on their disability qualify as an independent financial resource.  *See id.*

II.  SSI benefits provide a minimum standard of living for low-income disabled children and adults.

Congress established the SSI program "[f]or the purpose of establishing a national program to provide supplemental security income to individuals who have attained age 65 or are blind or disabled."  42 U.S.C. § 1381.  "The basic purpose underlying" the program "is to assure a minimum level of income for people who are . . . disabled and who do not have sufficient

---

[4] Throughout this opinion we will refer to both minor children and adult children eligible for child support due to disability as "children" eligible for "child support," in reference to their relationship with the payor and payee parents, and consistent with the language of the statute.  *See* Code § 20-108.1 (referring to the "child" or "children" throughout).

income and resources to maintain a standard of living at the established [f]ederal minimum income level." 20 C.F.R. § 416.110.

A person is eligible for SSI benefits if they are "aged, blind, or disabled" and "ha[ve] limited income and resources"; "[t]hus, the amount of income [they] have is a major factor" in determining both eligibility and the amount of SSI benefits paid. 20 C.F.R. § 416.1100; *see also* 20 C.F.R. § 416.410 ("The monthly rate [of benefits received] is reduced by the amount of the individual's income which is not excluded" from income by the regulations.). In calculating a beneficiary's payments, "income" includes "alimony and support payments," defined as "cash or in-kind contributions to meet some or all of a person's needs for food or shelter . . . made voluntarily or because of a court order." 20 C.F.R. § 416.1121(b).[5]

Generally, an SSI beneficiary "has the right to manage his or her own benefits." 20 C.F.R. § 416.601(b)(1). But when "due to a mental or physical condition or due to their youth"

---

[5] The SSI regulations make clear that support and alimony payments count as unearned income to the beneficiary. 20 C.F.R. § 416.1121(b). The regulations do not, however, expressly address whether child support payments made to a parent on behalf of a child are treated as income to the child, or to the parent. Despite this apparent ambiguity, for both adult and minor children, the Social Security Administration ("SSA") treats child support payments as income to the child. *See* SSA Program Operations Manual System SI § 00830.420(B)(1) ("When an eligible [minor] child receives child support payments . . . the payments are unearned income to the child," though one-third of the payments are excluded from income.); *id.* § 00830.420(C)(1) ("When a parent or other person receives current child support payments for an adult child . . . the income belongs to the adult child.").

Though child support payments count as income to both minor and adult children, the federal government excludes from income "[o]ne-third of support payments made . . . by an absent parent if [the recipient is] a child." 42 U.S.C. § 1382a(b)(9); 20 C.F.R. § 416.1124(c)(11). A child is "someone who is not married, is not the head of a household, and is either under age 18 or is under age 22 and a student." 20 C.F.R. § 416.1101. On its face, this exclusion does not apply to support payments in situations, like N.'s, in which a disabled adult child is receiving child support benefits from a payor parent. As a result, for minor children, receipt of child support only partially reduces their eligibility for SSI benefits. *See* 42 U.S.C. § 1382a(b)(9). But for disabled adult children, every dollar received in child support is one dollar less received in SSI benefits. *See* 20 C.F.R. §§ 416.1121(b), 416.410.

the beneficiary is "unable to do so," the federal government may select as representative payee the beneficiary's "legal guardian or some other person."  20 C.F.R. § 416.601(b)(1)-(2).

### III.  SSI benefits are not an independent financial resource.

Reviewing the text of Code § 20-108.1(B)(9) with this understanding of the SSI program, we hold that SSI benefits are not an independent financial resource.  "When construing a statute, our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute."  *Wallace v. Commonwealth*, 79 Va. App. 455, 461 (2024) (en banc) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)).  We must also read the term "independent financial resources" in the context of the broader statutory framework allowing child-support orders.  "A statute is not to be construed by singling out a particular phrase."  *Eberhardt v. Fairfax Cnty. Emps.' Ret. Sys. Bd. of Trustees*, 283 Va. 190, 195 (2012) (quoting *Va. Elec. & Power Co. v. Bd. of Cnty. Supervisors*, 226 Va. 382, 388 (1983)).  Rather, "it is our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal."  *Id.* at 194-95 (quoting *Va. Elec. & Power Co.*, 226 Va. at 387-88).  The statute describes "independent financial resources of the child" as one factor "affecting the obligation, the ability of each party to provide child support, and the best interests of the child."  Code § 20-108.1(B).  We therefore read the text with the understanding that the child's need and the parent's ability to pay are the fundamental driving forces behind every child-support order.  *See Alwan*, 70 Va. App. at 605.

We begin with the plain meaning of the text.  *See Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337 (2011).  SSI benefits are clearly financial resources available to the child.  Most critical to our understanding here, though, is the term "independent."  The term is not used elsewhere in Code §§ 20-108.1 or -108.2.  Under one definition from Black's Law Dictionary, "independent" means "[n]ot dependent or contingent on something else."

*Independent*, *Black's Law Dictionary* (11th ed. 2019). "Independent financial resources of the child" is one factor among fifteen which a court may consider before deviating from the child-support guidelines. Code § 20-108.1(B). The other factors focus primarily on the parents' income, assets, and obligations. *See, e.g.*, Code § 20-108.1(B)(11)-(12) (courts may consider "[e]arning capacity, obligations, financial resources, and special needs of each parent" as well as parental earnings on marital property); Code § 20-108.1(B)(3) (courts may impute income to parents who are "voluntarily unemployed or . . . underemployed"); Code § 20-108.1(B)(4), (6) (courts may consider a parent's expenses for childcare while pursuing education and other expenses incurred on behalf of the child). Given the primary focus in child-support calculations on the parents' resources, we read "independent" to mean largely, though perhaps not exclusively,[6] "[n]ot dependent or contingent on" the child's *parents* or their financial contributions. *See Independent*, *Black's Law Dictionary*, *supra*.[7]

Under that definition, SSI benefits are not "independent." SSI benefits *are* contingent. The amount paid is directly conditioned on the child's receipt of child-support payments from their parents. *See* 20 C.F.R. § 416.420 (noting that SSI benefit amounts are based on the benefit rate minus the beneficiary's countable income); SSA Program Operations Manual System SI § 00830.420(C)(1) ("When a parent or other person receives current child support payments for an adult child . . . the income belongs to the adult child."); *id.* § 00830.420(B)(1) ("When an

---

[6] In resolving this appeal, we do not address the proper treatment of other possible resources—such as trust funds or 529 plans—under Code § 20-108.1(B)(9). Though those resources often originate as parental funds, they are not dependent on the immediate, month-to-month contributions of parents in the same way that SSI benefits are calculated based on the parents' monthly child support obligation. Our holding today does not resolve these later questions nor bind the discretion of lower courts in evaluating whether non-SSI resources are independent financial resources of a child.

[7] We note that this reading is also consistent with an alternate definition from Black's: "[n]ot subject to the control or influence of another," meaning not subject to the control of the child's parents. *See Independent*, *Black's Law Dictionary*, *supra*.

eligible [minor] child receives child support payments . . . the payments are unearned income to the child," though one-third of the payments are excluded from income.).[8] As the child receives child support, their SSI benefits decrease. *See* 20 C.F.R. §§ 416.420, 416.1121. Accordingly, though a child may be eligible for SSI benefits whether or not they receive child support, the actual amount of SSI benefits they receive is directly conditioned upon the amount of child support they receive from their parents. *See* 20 C.F.R. §§ 416.420, 416.1121. This dependence suggests that, should a court reduce the child support owed based on the child's receipt of SSI benefits, the child's SSI benefits should increase in tandem, thus perhaps leading the child support to be decreased further in an unending loop. In the end, the parent would owe zero child support—their entire obligation having instead been shifted to the federal government. As the Supreme Court of Ohio summarized:

> [R]educing a parent's child support obligation by an amount representing the child's SSI benefits "would frustrate the purpose of the federal law by pushing the child's standard of living back below the federal minimum." Such an approach would result in a "stair-step" effect that would increase the child's reliance on federal assistance while decreasing the parents' financial responsibility, because as the child's SSI benefits increase, the parents' support obligation simultaneously decreases. In order to avoid this unintended and absurd result, "[t]he amount of supplemental security income received is modified as the amount of the recipient's other income changes, not vice versa."

---

[8] Child support payments received by a parent on behalf of their disabled adult or minor child qualify as income to the child. *See supra* note 5. Thus, for both minor and adult children, as the child receives support payments, their income goes up, and their SSI eligibility goes down.

As a separate matter, as the dissent points out, a minor child's SSI benefits are also often directly dependent on their parents' income. *Ante* at 20 n.17. When a minor child lives with their parents, the SSA deems a portion of the parent's income as income to the child. *See* 20 C.F.R. § 416.1165. This does not change the reality that, even after age 18, the amount of a disabled adult child's SSI benefits remains dependent on the child's continued receipt of support payments from their parents.

*Paton v. Paton*, 742 N.E.2d 619, 622 (Ohio 2001) (second alteration in original) (quoting *Oatley v. Oatley*, 387 N.E.2d 245, 246 (Ohio Ct. App. 1977)).[9] This result suggests that SSI benefits are not independent. In light of the "best interests of the child" standard set forth in Code § 20-108.1(B), we do not believe that the General Assembly intended this downward spiral which would ultimately lead the child to have less access to resources to meet the child's basic needs.

We also note the outcome of treating SSI benefits as an independent financial resource. If a circuit court may decrease a payor parent's child-support obligation based on the child's receipt of SSI benefits, a parent may eliminate their legal obligation to provide for their disabled child at the expense of the public welfare system. This is so even though the child has already been found to have financial need because of their disability and the SSI benefits have no relation to the payor parent's ability to pay. We do not believe this result—decreasing the ability of disabled children to provide for their own needs without government assistance—is what the General Assembly intended. *See generally Independent*, *Black's Law Dictionary*, *supra* (noting that "independent" means "[n]ot dependent or contingent on something else," as in "*an independent person*" (emphasis added)).

IV. Reading Code § 20-108.1 and § 20-108.2 together shows that SSI may not support a reduction in child support.

We next consider the effect of Code § 20-108.2 on our conclusion that SSI is not an "independent financial resource[]" under Code § 20-108.1. *See Eberhardt*, 283 Va. at 194-95 (noting this Court's obligation to consider related legislative provisions in the context of the whole enactment). Code § 20-108.2(B) provides a schedule for calculating the presumptive

---

[9] We need not consider in the case before us how exactly this loop would play out in practice, considering the different timelines for review of SSI benefits and child support benefits. We simply note that this irrational result is inconsistent with the plain meaning of the word "independent" in Code § 20-108.1(B)(9).

- 9 -

child-support amount based on the parents' combined monthly gross income. "Gross income" is defined broadly to mean "all income from all sources," with an accompanying non-exhaustive list of possible sources. Code § 20-108.2(C); *see also Bennett v. Commonwealth*, 22 Va. App. 684, 693-94 (1996), *superseded by statute on other grounds*, 2006 Va. Laws ch. 798, *as recognized in Murphy v. Murphy*, 65 Va. App. 581, 585-91 (2015). Yet "'[g]ross income' shall not include" four items, including "[f]ederal supplemental security income benefits." Code § 20-108.2(C); *Bennett*, 22 Va. App. at 694.[10] In *Bennett*, this Court affirmed that this provision means what it says—that SSI benefits received by a disabled child are excluded from the parents' gross income in calculating the guideline support amount. 22 Va. App. at 695. The Court in *Bennett* concluded that a parent "is not entitled to a credit or reduction in his child support obligation as a result of the SSI benefits the [custodial parent] receives for [the child]'s disability," seemingly determining the outcome of this case. *Id.* The Court did not directly consider, however, whether a child's SSI benefits could count as an independent financial resource to the child, which a circuit court, in its discretion, could rely on to deviate from the guidelines.

In *Rinaldi v. Dumsick*, 32 Va. App. 330 (2000), this Court considered another related question—whether a circuit court could, in its discretion, *decline* to reduce a parent's support obligation based on the child's receipt of SSI benefits. *Id.* at 335-37. The Court in *Rinaldi* noted "that '[t]here is nothing inherently unjust or inappropriate about making a father support his child, if he is able to do so, before looking to a government welfare program that is intended to supplement the resources of the needy.'" *Id.* at 337 (quoting *Barker v. Hill*, 949 S.W.2d 896,

___

[10] We need not decide for purposes of this appeal whether the other items excluded from gross income in Code § 20-108.2(C), including public assistance benefits and child support payments, may be considered independent financial resources, which could lead to a reduction in child support.

898 (Ky. Ct. App. 1997)).  The circuit court thus did not err when it found that application of the guidelines would be neither unjust nor inappropriate and declined to reduce the father's child-support payments.  *Id.*  But in reaching this result, the Court noted that it "believe[d] the circuit court properly could consider as an independent financial resource of the child . . . his SSI."  *Id.* at 336.  This statement departed from the language in *Bennett* that a child's SSI benefits could not support a reduction in a parent's support obligation.  *Bennett*, 22 Va. App. at 695.  And given that the circuit court in *Rinaldi* decided not to deviate downward, the statement was dicta, unnecessary to the ultimate holding that the circuit court did not abuse its discretion.  *See Dictum*, *Black's Law Dictionary*, *supra*.[11]  At any rate, we now overrule *Rinaldi* on this point.[12]

As noted in *Bennett*, Code § 20-108.2(C) expressly excludes SSI from gross income when calculating the presumptive amount of child support.  *See Bennett*, 22 Va. App. at 695.  To enforce this exclusion and yet allow a circuit court to treat a child's SSI benefits as an independent financial resource would create a backdoor path for payor parents to reduce child

---

[11] The dissent argues that because the General Assembly could have acted to overturn *Rinaldi* but chose not to, the General Assembly has embraced the rule that SSI benefits may be an independent financial resource.  *Ante* at 23-24.  We agree that generally "inaction by the General Assembly despite awareness of the Court's interpretation of a statute" suggests approval of the Court's interpretation.  *Cygnus Newport-Phase 1B, LLC v. City of Portsmouth*, 292 Va. 573, 582 (2016).  But this rule of construction is inapplicable to dicta, which does not represent the authoritative voice of this Court.  *See Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006) ("[W]e are not bound to follow our dicta in a prior case in which the point now at issue was not fully debated."); *Metro Stevedore Co. v. Rambo*, 515 U.S. 291, 299-300 (1995) (declining to apply the legislative inaction canon to dicta, noting that "[b]reath spent repeating dicta does not infuse it with life").

[12] Beyond its use of dicta and apparent inconsistency with *Bennett*, we also find *Rinaldi*'s reasoning unpersuasive.  *Barker*, the Kentucky case on which *Rinaldi* relied, was poor persuasive authority because the Kentucky statute—unlike Code § 20-108.2—expressly *includes* SSI benefits in gross income when calculating the presumptive child support amount.  *See Barker*, 949 S.W.2d at 897; *Rinaldi*, 32 Va. App. at 337.  Though Code § 20-108.1(B)(9) is similar to the Kentucky statute allowing for consideration of "[t]he independent financial resources, if any, of the child or children," the Kentucky statute as a whole is meaningfully different from Virginia's statutory scheme, and we thus find *Barker* inapposite in this case.  *See* 949 S.W.2d at 897 (quoting Ky. Rev. Stat. Ann. § 403.211(3)(d)).

support, contrary to the General Assembly's express exclusion. As mother points out on brief, this circumvention of Code § 20-108.2(C) leads to absurd results.

Here, N. receives an SSI payment of about $700 each month. The parties stipulated that under the guidelines, father owed child support of $1,103 each month. The circuit court initially reduced father's child-support obligation by $700, then changed the reduction to $336 upon reconsideration. If SSI benefits are an independent financial resource, either reduction would be a permissible exercise of discretion if the court found that "the application of [the] guidelines would be unjust or inappropriate." *See* Code § 20-180.1(B). In contrast, if the circuit court had included the SSI benefits as income to mother—treatment barred by *Bennett* and Code § 20-108.2(C)—the guideline obligation would be $1,026. In other words, the General Assembly expressly barred including SSI as income to mother, which would have decreased N.'s support payments by $77 each month. It is implausible to believe that the General Assembly intended that instead, the circuit court could rely on N.'s SSI benefits to reduce his support payments by up to $700. *See Willems v. Batcheller*, 78 Va. App. 199, 222 (2023) (noting the "established principle of statutory interpretation that 'statutes are to be construed so as to avoid an absurd result'" (quoting *Eastlack v. Commonwealth*, 282 Va. 120, 126 (2011))). Though the General Assembly designed the child-support system to rest on the sound discretion of judges in individual cases, that discretion must operate within the bounds set by the language of the statute. Reading Code §§ 20-108.1 and 20-108.2 together, a court does not have discretion to treat SSI as an independent financial resource and thereby rely on it to reduce a parent's child-support obligation.[13]

---

[13] Our dissenting colleagues highlight the inclusion of a catch-all factor in Code § 20-108.1(B)(15) to suggest that a circuit court may rely on SSI benefits as one factor among many equities in determining the proper child-support amount. *See* Code § 20-108.1(B)(15) (allowing the weighing of "[s]uch other factors as are necessary to consider the equities for the

Often "when the General Assembly has used specific language in one instance but omits that language . . . when addressing a similar subject elsewhere in the Code, [the Court] must presume that the difference in the choice of language was intentional." *Morgan v. Commonwealth*, 301 Va. 476, 482 (2022) (second alteration in original) (quoting *Zinone*, 282 Va. at 337). Under certain circumstances, the omission is evidence "that the General Assembly 'knows how' to include such language in a statute to achieve an intended objective." *Id.* (quoting *Brown v. Commonwealth*, 284 Va. 538, 545 (2012)). In other words, under one reading of the statute, we should presume that the lack of any mention of SSI in Code § 20-108.1 means that SSI *could* be an independent financial resource. But in this case, we find the presumption unpersuasive.

Though Code §§ 20-108.2 and -108.1 are intimately connected, they address different aspects of child-support calculations and do not contain parallel language with an obvious omission. *Cf. Morgan*, 301 Va. at 481-82 (noting the absence of "about his person" language—included in the definition of carrying a concealed firearm—in the similar definition of carrying a handgun while intoxicated); *Rives v. Commonwealth*, 284 Va. 1, 3 (2012) (noting that Code § 18.2-427 criminalizes "obscene" language and "obscene" proposals but does not require criminal threats to be "obscene"); *Hollingsworth v. Norfolk S. Ry. Co.*, 279 Va. 360, 366 (2010) (noting the omission of the word "diagnosis" from the definition of the practice of podiatry, despite its inclusion in the definition of the practice of medicine in the same code section). Rather, Code § 20-108.2(C) defines "gross income," a broad term with four narrow exceptions, while Code § 20-108.1(B) lists a wide range of undefined factors, with no delineated exceptions.

---

parents and children"); *ante* at 25 n.21. Though this factor may be expansive, the circuit court's authority does not allow it to consider improper factors. Here, the statutory scheme as a whole, including the exclusion of SSI benefits under Code § 20-108.2(C)(2), leads us to conclude that a court may never permissibly consider a disabled adult child's receipt of SSI benefits in reducing a parent's child-support obligation.

We need not read into the General Assembly's decision not to include a textual exception for SSI in the definition for independent financial resources—given that the General Assembly declined to provide a definition at all. Instead, we evaluate the term "independent financial resources" based on the plain text and the General Assembly's intent in crafting the child-support statute. *See Eberhardt*, 283 Va. at 194-95; *Wallace*, 79 Va. App. at 461.

"[S]tatutes concerning the same subject are to be read together, and construed, wherever possible, so as to avoid conflict between them and to permit each of them to have full operation according to their legislative purpose." *Eastlack*, 282 Va. at 125-26. The legislature here intended to provide for the "best interests of the child" in light of each parent's ability to pay child support. Code § 20-108.1(B). The reduction of child support based on SSI benefits serves neither of these ends. A child's receipt of SSI benefits does not impact a payor parent's financial resources, and the continued receipt of child-support payments is likely to provide the disabled child with materially better living conditions. Thus, we do not believe that the General Assembly intended to treat a child's receipt of SSI benefits as an independent financial resource justifying a reduction in child support.[14]

---

[14] We note that in this case, the circuit court found that because mother lacked separate income, she "us[ed] SSI benefits intended to benefit N[.] to benefit herself and N[.]." Based on this finding of misuse coupled with its legal determination that SSI benefits could be an independent financial resource, the court determined that application of the presumptive child support guidelines would be "unjust and inappropriate." Though we must defer to the factual findings of the circuit court unless they are plainly wrong, *see Gray v. Gray*, 228 Va. 696, 699 (1985), the circuit court erred in applying the law to these facts. Even in situations of misuse of funds, reduction in child support—reducing the resources available to meet the needs of a vulnerable individual—is not the proper remedy. Rather, the SSI program provides for assignment of an alternative payee if continued payment to the representative payee is not in the best interests of the beneficiary. *See* 20 C.F.R. § 416.650; *see also* 20 C.F.R. § 416.641 (establishing a representative payee's liability to pay restitution for misused SSI benefits).

## V. The congressional policy undergirding SSI counsels against treating SSI benefits as an independent financial resource.

The congressional policy behind SSI further supports our conclusion that SSI benefits are not an independent financial resource. The very name—supplemental security income—suggests that SSI was intended to provide additional assistance to meet the basic needs of disabled individuals, rather than to replace other sources of income. As we noted in *Bennett*, "SSI benefits received by a disabled child are intended to supplement other income, not substitute for it." 22 Va. App. at 694 (quoting *Kyle v. Kyle*, 582 N.E.2d 842, 846 (Ind. Ct. App. 1991)); *see also* 20 C.F.R. § 416.110 (noting that SSI was established "to assure a minimum level of income for people who are . . . disabled and who do not have sufficient income and resources" without the program). "Congress included disabled children under the SSI program in the 'belief that disabled children who live in low-income households are certainly among the most disadvantaged of all Americans and that they are deserving of special assistance in order to help them become self-supporting members of our society.'" *Paton*, 742 N.E.2d at 621 (quoting *Kyle*, 582 N.E.2d at 846). This "supplemental" source of income does not replace other income sources and does not change the underlying level of child need. Thus, SSI benefits are not an independent financial resource that would allow a circuit court to decrease a parent's child-support obligation.[15] The circuit court therefore erred in relying on it to reduce father's duty to support his disabled adult child.

---

[15] Though the statutory frameworks establishing child support guidelines and allowing deviations vary widely, we note that many other state courts have similarly found that "a noncustodial parent is not entitled to a child support credit based upon a dependent child's receipt of SSI benefits." *Martin v. Martin*, 874 N.E.2d 1137, 1140 n.6 (Mass. App. Ct. 2007); *see also Gifford v. Benjamin*, 892 A.2d 738, 739-41 (N.J. Super. Ct. App. Div. 2006); *Paton*, 742 N.E.2d at 619-22; *In re Marriage of Emerson*, 850 P.2d 942, 945-47 (Kan. Ct. App. 1993); *Lightel v. Myers*, 791 So.2d 955, 960 (Ala. Civ. App. 2000); *In re Lister*, 27 A.3d 673, 675-76 (N.H. 2011); *State ex rel. Dep't of Soc. Servs. Div. of Child Support Enf't v. Kost*, 964 S.W.2d 528, 529-31 (Mo. Ct. App. 1998); *In re Marriage of Thornton*, 802 P.2d 1194, 1196 (Colo. App.

CONCLUSION

Because SSI benefits are not an independent financial resource that may support a reduction in child-support payments, the circuit court erred in reducing father's obligations based on N.'s receipt of SSI benefits for his disability. Accordingly, we reverse and remand for the circuit court to enter a new child-support order consistent with this opinion.

*Reversed and remanded.*

---

1990); *Anderson v. Powell*, 221 S.E.2d 565, 566 (Ga. 1975); *Nelson v. Nelson*, 454 N.W.2d 533, 536-37 (S.D. 1990). *But see Barker*, 949 S.W.2d at 897-98; *Velez v. Velez*, 552 So.2d 1271, 1273-74 (La. Ct. App. 1989).

Callins, J., with whom Athey, Causey, Friedman, Chaney and Lorish, JJ., join, dissenting.

Read in the context of Code §§ 20-108.1 and 20-108.2, the term "independent financial resources of the child or children" refers to financial resources available to a child independent of those provided by the parent. In other words, the term refers to income received by and/or for the benefit of the child from a source *other than a parent*. Here, the majority strips the language "independent financial resources" of this meaning. Because I interpret the term "independent financial resources" to refer to a financial source *other than a parent*, I cannot join those of my colleagues who would hold that the trial court is precluded from considering Supplemental Security Income (SSI) payments for an adult disabled child as a basis for deviation from the presumptive child support guideline amount. Thus, I would affirm the judgment of the trial court.

First, consider the relevant text. Subsection B of Code § 20-108.1 states, "there shall be a rebuttable presumption in any judicial or administrative proceeding for child support . . . that the amount of the award that would result from application of the guidelines set out in § 20-108.2 is the correct amount of child support to be awarded." The presumptive child support amount is determined by applying both parents' "combined monthly gross income amounts" and extrapolating a basic child support obligation amount from the statutory schedule. Code § 20-108.2(B).[16] Key here is that the gross income used is that of each parent. A parent's "'gross income' means income from all sources." Code § 20-108.2(C). The subsection includes

_____

[16] Moreover, Code § 20-108.2(B) provides that parents "medically verified to be totally and permanently disabled with no evidence of potential for paying child support, including recipients of Supplemental Security Income (SSI)," are exempt from the presumptive minimum monthly child support obligation. This exemption further establishes that SSI disbursed to a parent is distinct from SSI disbursed for a child.

- 17 -

a varied, non-exhaustive list of income sources, including social security benefits, unemployment insurance benefits, and disability insurance benefits. *See id.*

Code § 20-108.2(C) specifically excludes four income sources from consideration as a parent's gross income: benefits from public assistance and social services programs, child support, "secondary employment income" earned by a parent attempting to discharge a child support debt, and Federal supplemental security income benefits. Thus, Code § 20-108.2(C) carves out four categories of funds from gross income in setting the presumptive guideline rate of child support. But Code § 20-108.2(C) does not operate as a per se preclusion, imposing a statutory bar preventing trial courts from considering these four income sources in setting child support levels.

Code § 20-108.1(B) gives the trial court authority, after determining the presumptively reasonable child support amount, to deviate from that amount where a trial court finds, after "consider[ing] *all* evidence presented relevant to any issues joined in that proceeding," the application of the presumptive amount "unjust or inappropriate in a particular case." (Emphasis added). The statute enumerates several specific factors a trial court may take into consideration for this purpose, including, most broadly, "[s]uch other factors as are necessary to consider the equities for the parents and children." Code § 20-108.1(B)(15). Accordingly, Code § 20-108.1(B) imparts to trial courts wide discretion to determine the necessity of deviation from the presumptive child support amount on the basis of the enumerated factors—and, where appropriate, other factors, as equity demands.

At issue here is factor 9: independent financial resources of the child. Code § 20-108.1(B). We are confronted with the question of whether SSI is an independent financial resource of this child. The meaning of the word "independent," while not elusive, is multiple. It can mean, for example, "[n]ot subject to the control or influence of another," "[n]ot associated

- 18 -

with another (often larger) entity," "[n]ot dependent or contingent on something else." *Independent*, *Black's Law Dictionary* (11th ed. 2019). But we need not define "independent" in a vacuum. The term should be understood in a way that best fits its use in Code § 20-108.1(B)(9), and which reflects the dynamics of interplay between Code §§ 20-108.1 and 20-108.2. That is, the meaning of "independent," here, must comport with the relevant statutory text, which gives to trial courts extensive discretion to look *beyond* or *outside of* sources of income considered in the presumptive child support amount—that is, the gross income of the parents—to determine whether the presumptive amount is the appropriate amount under the circumstances. *See Phillips v. Rohrbaugh*, 300 Va. 289, 308-09 (2021) ("[This Court's] duty is to interpret 'the entire statute—i.e., the entirety of a single legislative enactment as it appears in the Acts of Assembly as a whole—to place its terms in context' and to 'interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal.'" (quoting *Eberhardt v. Fairfax Cnty. Emps. Ret. Sys. Bd. of Trs.*, 283 Va. 190, 194-95 (2012))).

These considerations yield a definition of "independent" that contrasts with the majority's definition. Read contextually, the term "independent" connotes "originating from outside a given unit . . . or made by individuals from outside a given unit." *Independent*, *Webster's Third New International Dictionary, Unabridged* (2021). It also simply means "separate." *Independent*, *Collins*, https://perma.cc/92GE-PKRJ. Understood in the context of Code § 20-108.1(B)(9), the term "independent" encourages the question, who or what is the "another" or "something else" that is "separate"; who or what is the "given unit"? When Code §§ 20-108.1 and 20-108.2 are read together, the word "independent," in the phrase "independent financial resources," naturally references a person or entity *outside* of the parents.

Thus, the term "independent financial resources of the child or children," as used in Code § 20-108.1(B)(9), broadly includes any financial resources available to a child that are

independent of—separate from—those provided by the parent. And Supplemental Security Income, commonly known as "SSI," is one such source of income. SSI is provided by the federal government "to provide supplemental security income to individuals who . . . are . . . disabled." 42 U.S.C. § 1381. Only an eligible individual, including one deemed "disabled," may receive SSI benefits. This is not to suggest, however, that a parent's income has no impact on the level of SSI received. The amount of an SSI benefit takes into consideration a parent's income *if* that parent is also the individual's caretaker. 20 C.F.R. § 416.1165. This consideration does not, however, remove SSI from the ambit of Code § 20-108.1(B)(9). Eligibility for receipt of any amount of SSI remains conditioned on the ability status of *the recipient*, not *the recipient's parent*. SSI is a special form of direct, monetary assistance, provided by the federal government apart from and therefore not coterminous with a parent's income. *See* 20 C.F.R. § 416.1165(g)(7) ("In the month following the month in which you attain age 18 and thereafter, we do not deem your ineligible parent's income to you to determine your eligibility for SSI benefits."); *cf.* Code § 20-108.2(C)(2) ("'Gross income' shall not include: . . . Federal supplemental security income benefits[.]").

Accordingly, SSI is a source of income available to a disabled individual independent of other sources of income, *including the monetary or in-kind aid provided by a parent*. *See* 20 C.F.R. § 416.1165(g)(7).[17] Further, SSI is based first and foremost on the eligibility of the

---

[17] Federal guidelines regarding the calibration of SSI levels underscore the extent to which SSI is held separate from parental income. 20 C.F.R. § 416.1165(g)(7), referenced above, provides that, in the month after an individual turns 18, and "thereafter,"

> we do not deem your ineligible parent's income to you to determine your eligibility for SSI benefits. In determining your benefit amount beginning with the month following your attainment of age 18, we only use your own countable income in a prior month, excluding any income deemed to you in that month

individual—it is a financial resource *of the child*. 20 C.F.R. §§ 416.410, 416.1100; *see* Code

§ 20-108.1(B)(9) ("independent financial resources *of the child or children*" (emphasis added)).

Thus, SSI is both outside of the resources of the parents and not a resource to which a parent[18] is

entitled, even if the resources of the parents determine the *level* of outside benefits a child

receives. Simply put, SSI is a benefit that belongs to the child and depends alone upon that

child's status—it is, in all dimensions, an independent financial resource of the child.

To hold otherwise, as the majority does, is to render the word "independent"

meaningless, or otherwise give it a strained, and unnatural meaning. By shrinking down the

meaning of "independent" to rule out anything contingent upon a parent, the majority's

construction of the statute risks absurdity, since for a minor child—as certainly for a disabled

adult child—there is almost no resource completely independent of a parent. *See Payne v.*

> from your ineligible parent (see § 416.1160(b)(2)(B)). Your income for the current and subsequent months must include any income in the form of cash or in-kind support and maintenance provided by your parents. If you attain age 18 and stop living in the same household with your ineligible parent, these rules take precedence over paragraph (g)(4) of this section which requires continued use of deemed income in the benefit computation for 2 months following the month you no longer live in the same household.

This rule, rather than supporting the majority's conclusion that SSI benefits do not constitute an independent financial resource, impresses that (i) SSI, because determined with respect to parent-provided income, is intended to serve as assistance *apart* from, and *in addition to* income or in-kind support furnished by parents and (ii) SSI attaches to and so follows the eligible disabled individual, and thus, is an independent financial resource *of* that individual.

The majority contends that "even after age 18, the amount of a disabled adult child's SSI benefits remains dependent on the child's continued receipt of support payments from their parents," and, thus, there is no "change in reality" after an SSI beneficiary attains the age of 18. The role of child support payments in SSI benefits calculations is more nuanced than the majority represents. Nonetheless, SSI benefits for a child are *always* a payment to the child, even when held in trust by a parent during his minority.

[18] *See supra*, footnote 16.

*Fairfax Cnty. Sch. Bd.*, 288 Va. 432, 436 (2014) ("Absurdity 'describes "situations in which the law would be internally inconsistent or otherwise incapable of operation."'" (quoting *Covel v. Town of Vienna*, 280 Va. 151, 158 (2010))).

The conclusion that SSI is an independent financial resource of a child is also consistent with the purpose of Code § 20-108.1(B). Code § 20-108.1(B) expressly focuses on "the best interests of the child," while also permitting, as a relevant factor, consideration of a parent's ability to pay child support. Thus, although Code § 20-108.2(C) sets as a baseline presumption that SSI benefits cannot be considered in calculating the presumptive amount owed, Code § 20-108.1(B) allows for this presumptive amount to be rebutted upon an evidentiary showing of why it would be, e.g., consistent with the best interests of the child to deviate from the presumption. To constrict the discretion of a trial court by precluding it from considering SSI as an independent financial resource of the child would prevent it from considering all of the evidence to calibrate a child support amount that aligns with the best interests of the child. Such constriction on the discretion of a trial court directly contravenes the purpose and text of Code § 20-108.1(B).[19]

---

[19] Nothing in the language of Code § 20-108.1 suggests that the General Assembly wanted to limit a trial court's consideration of financial resources that might affect its weighing of equities. Indeed, the majority does not cite any other language from Code § 20-108.1 to support its interpretation of subsection (B)(9). Instead, the majority relies on policy considerations and the assumption that the General Assembly did not want courts to ever consider SSI benefits, rather than merely not considering such payments in setting the baseline. Neither the statutory text nor common sense supports this assumption. The supplemental nature of SSI benefits, the fact that the payments are paid to the child, and the overall purpose, all militate against treating SSI benefits as parental income. But the General Assembly made exception, not only for SSI benefits, but also for benefits from public assistance and social services programs, child support, and "secondary employment income" earned by a parent attempting to discharge a child support debt, excluding these categories from the parental income calculation. The majority fails to provide a basis for the far-reaching conclusion that SSI benefits are the only category of funds a trial court is prohibited from considering as a basis for deviation under Code § 20-108.1(B).

- 22 -

Whether the trial court erred in weighing the factors under Code § 20-108.1 was not properly preserved for our review in this case. And this Court need not contort the meaning of Code § 20-108.1(B)(9) to answer this unasked question and thereby exclude SSI from consideration as an independent financial resource of a child. Such contortions produce a result supported by neither the text of Code §§ 20-108.1 and 20-108.2, nor the features of the SSI program.

What is more, in *Rinaldi v. Dumsick*, 32 Va. App. 330, 336 (2000), this Court recognized that under Code § 20-108.1(B)(9), a trial court, "[i]n determining whether application of the guidelines would be unjust or inappropriate," could properly consider SSI to an adult disabled child as an independent financial resource. The language of Code § 20-108.1(B)(9), before and after *Rinaldi*, has also been mostly the same, and in that time, the General Assembly has only made minor revisions to the provision. Notably, for nearly 25 years since *Rinaldi*, the General Assembly has left Code § 20-108.1(B)(9)'s phrase "independent financial resources of the child or children" relatively untouched,[20] though amending the statute *12 times*. 2022 Va. Acts ch. 527; 2020 Va. Acts ch. 192; 2013 Va. Acts ch. 276; 2012 Va. Acts ch. 522; 2010 Va. Acts ch. 176; 2009 Va. Acts ch. 713; 2007 Va. Acts ch. 872; 2006 Va. Acts ch. 798; 2006 Va. Acts ch. 785; 2004 Va. Acts ch. 1008; 2004 Va. Acts ch 204; 2001 Va. Acts ch. 809. As a reminder, "[w]hen the General Assembly acts in an area in which one of its appellate courts already has spoken, it is presumed to know the law as the court has stated it and to acquiesce therein, and if the legislature intends to countermand such appellate decision *it must do so explicitly*." *Weathers v. Commonwealth*, 262 Va. 803, 805 (2001) (emphasis added). From this presumption,

---

[20] The General Assembly in 2006 Va. Acts ch. 798 amended "independent financial resources, if any, of the child or children" to the "independent financial resources of the child or children," phrasing currently present in the statute.

- 23 -

where precedent exists at the time of the amendments and the General Assembly does nothing to supplant it, we are to suppose from its silence that the "General Assembly intended courts to be guided by those precedents." *Lambert v. Sea Oats Condo. Ass'n*, 293 Va. 245, 254 (2017). Here, that silence is deafening.

Judges are not legislators. And while we may attempt to weave nuanced policy considerations—even reasonable and valid ones—into statutory interpretation, doing so may produce consequences which reverberate in unpredictable and far-reaching ways.

Nevertheless, one consequence is readily discernable. Whereas the guidelines under Code § 20-108.2 are set up to calculate support based on the income of the parents, Code § 20-108.1(B) protects the trial court's inherent authority to weigh equities, including "factors affecting the obligation, the ability of each party to provide child support, and the best interests of the child." A trial court should be permitted to recognize the receipt and use of independent financial resources, including SSI, in weighing equities and the fairness of the circumstances of the child and the parents. And though we have held a trial court erred in finding that a guideline deviation was justified, we did so because the court abused its discretion—we have never before concluded that a category of information is per se impermissible and can never be considered. Today is that day.

Today's holding alters the established statutory scheme by reconstructing the phrase "independent financial resources" to mean something other than that conveyed by the text of Code § 20-108.1(B)(9). This new construction impairs rather than facilitates a trial court's ability to balance equities fully and fairly—eliminating from consideration resources that include, and could reach beyond, SSI. But today's holding is not cabined to Code § 20-108.1(B)(9). The majority categorically removes SSI benefits from the scales entirely, barring its consideration altogether, even when "necessary to consider the equities for the parents

- 24 -

and children" under Code § 20-108.1(B)(15).[21]  By holding that SSI—and, by extension,

presumably *all* of the exceptions Code § 20-108.2(C) sets forth—cannot serve as a basis for

deviation under Code § 20-108.1(B), the majority writes into Code §§ 20-108.2(C) and

20-108.1(B) an exclusion found nowhere in the plain text of either statute.

I agree with the majority that a trial court's discretion "must operate within the bounds

set by the language of the statute."  But the existing boundaries of Code § 20-108.1(B) are hardly

"set" when the Court so easily draws *new* boundaries that, as here, shrink a trial court's

---

[21] Under Code § 20-108.1(B)(15), a trial court may consider "[s]uch other factors as are necessary to consider the equities for the parents and children."  As this Court has previously explained, "Section 20-108.1 expressly identifies fourteen factors that are relevant in determining if the trial court is warranted in varying from the presumptive amount, and the statute additionally provides authority for the court to consider '[s]uch other factors as are necessary to consider the equities for the parents and child.'"  *Niblett v. Niblett*, 65 Va. App. 616, 625-26 (2015) (alteration in original) (quoting Code § 20-108.1(B)).  We have historically interpreted this last catch-all factor to be incredibly expansive, including consideration of "the liquidity of . . . inheritance income, its regularity, its use to reduce marital debts, and other factors," *Da'mes v. Da'mes*, 74 Va. App. 138, 147 (2022), and "a finding of financial irresponsibility on the part of the mother," *Princiotto v. Gorrell*, 42 Va. App. 253, 259 (2004).  In footnote 13 of the majority opinion, this Court now constricts the bounds of the statute by applying an approach to statutory construction that is itself boundless.

The trial court's letter opinion contained a detailed explanation of the basis for its deviation under Code § 20-108.1.  The court made a factual finding that "Mother is using funds intended for her children's support to support *herself* and her children," that "Mother is using SSI benefits intended to benefit [N.] to benefit *herself* and [N.]," and that "to meet her own separate needs, Mother must divert some portion of her children's benefits."  (Emphases added).  The court emphasized that "[c]hild support is not other parent support" and that "[t]o ignore [N.]'s SSI benefit" to mother would produce "an unjust and inappropriate result."  The court acknowledged that N. was disabled, that "his financial needs are presumably greater," and that, as a result, even though "[n]o evidence was presented of any specific expense related to [N.] that would require child support greater than the guidelines amount," that only a partial reduction of child support to account for mother's personal diversion of resources would be appropriate.

This is exactly the kind of fact-specific weighing of the equities the General Assembly intended courts to engage in when exercising their discretion to consider "[s]uch other factors as are necessary to consider the equities for the parents and children."  Code § 20-108.1(B)(15).

- 25 -

previously broad scope of discretion.  Surely, if this were the arrangement and statutory scheme

that the General Assembly had intended, it would have said so.[22]  It did not.

It is for these reasons that I respectfully dissent.

---

[22] That the General Assembly could have done so is plainly evinced by Code § 20-108.2, which is attentive to the issue of accounting for SSI in child support calculations.

UNPUBLISHED

*VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **19th** *day of* **September, 2023**.

Pamela Kay Humphries, Appellant,

 against Record No. 0877-22-2
Circuit Court No. CL21J01831-00

Robert Brian Buchanan, et al., Appellees.

Upon a Petition for Rehearing En Banc

Before the Full Court

On September 5, 2023 came the appellant, by counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on August 22, 2023, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the petition for rehearing *en banc* is granted in part with respect to the following issue:

The circuit court erred as a matter of law when it concluded that Noah Buchanan's Supplemental Security Income disability benefits should be applied to reduce his father's child support obligation.

The appeal of that issue is reinstated on the docket of this Court. The mandate previously entered herein is stayed pending the decision of the Court *en banc*.

The remainder of the petition for rehearing *en banc* is denied.

The parties shall file briefs in compliance with the schedule set forth in Rule 5A:35(b).

A Copy,

Teste:

A. John Vollino, Clerk

*original order signed by a deputy clerk of the*
By: *Court of Appeals of Virginia at the direction*
*of the Court*

Deputy Clerk

Present:   Judges Ortiz, Chaney and Senior Judge Haley
Argued at Richmond, Virginia


PAMELA KAY HUMPHRIES

                                                              MEMORANDUM OPINION[*] BY
v.         Record No. 0877-22-2                    JUDGE VERNIDA R. CHANEY
                                                                  AUGUST 22, 2023

ROBERT BRIAN BUCHANAN, ET AL.


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Edward A. Robbins, Jr., Judge

Robert W. Loftin (J. Tracy Walker IV; Jonathan T. Tan;
McGuireWoods LLP, on brief), for appellant.

No brief or argument for appellees.


Pamela Kay Humphries (mother) appeals the circuit court's judgment reducing Robert Brian

Buchanan's (father) child support obligation.  Mother contends that the circuit court erred in

(1) applying their disabled child's federal Supplemental Security Income ("SSI") disability benefits

to reduce father's child support obligation, (2) finding a requisite material change in circumstances

to support a modification of the previous child support order, without evidence to support this

finding, and (3) finding that father rebutted the presumption of correctness of the statutory child

support guidelines and deviating from the guidelines.

"On appeal, we presume the judgment of the trial court is correct . . . ." *Bay v.

Commonwealth*, 60 Va. App. 520, 528 (2012).  "The burden is upon the appellant to provide [the

appellate court] with a record which substantiates the claim of error.  In the absence [of a

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

sufficient record], we will not consider the point." *Dixon v. Dixon*, 71 Va. App. 709, 716 (2020) (alterations in original) (quoting *Robinson v. Robinson*, 50 Va. App. 189, 197 (2007)).

This Court cannot address mother's assignments of error because mother failed to file a transcript, or a written statement of facts in lieu of a transcript, of the October 15, 2021 trial in the circuit court. *See* Rule 5A:8(a) (requiring transcripts to be filed no later than 60 days after entry of the trial court's final order). Because this Court cannot resolve mother's assignments of error without considering the evidence underlying the circuit court's factual findings and computation of child support, the missing trial transcript is indispensable in this appeal. *See* Rule 5A:8(b)(4)(ii) ("When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered."). *See also Smith v. Commonwealth*, 32 Va. App. 766, 772 (2000) (holding that "[t]his Court has no authority to make exceptions to the filing requirements" for transcripts "set out in the Rules" (quoting *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986))).

Although mother timely filed a transcript of the January 14, 2022 hearing on her motion for reconsideration of the circuit court's October 15, 2021 *ore tenus* ruling, the January 2022 proceeding was a non-evidentiary hearing. As the circuit court noted in its March 3, 2022 opinion letter, "No testimony was provided, and no exhibits were admitted at the 14 January 2022 hearing." Therefore, the timely-filed transcript of the January 14, 2022 hearing does not provide the evidentiary record necessary to permit resolution of the issues raised in mother's assignments of error.

Because mother failed to ensure that the record contains a timely-filed transcript, or a written statement of facts in lieu of a transcript, necessary to permit resolution of her assignments of error, this Court affirms the circuit court's judgment. *See* Rule 5A:8(b)(4)(ii); *see also Smith*

*v. Commonwealth*, 281 Va. 464, 470 (2011) ("the failure to timely file the transcript . . . did not deprive the Court of Appeals of its active jurisdiction to proceed to judgment in the appeal," affirming the trial court's judgment).

*Affirmed.*

Ortiz, J., concurring in part, and dissenting in part.

I concur that we cannot consider Humphries' second and third assignments of error—that no evidence was presented to establish a material change in circumstances or to rebut the presumptive child support guidelines—as Humphries failed to timely file a transcript on appeal. But I dissent from the majority's decision that our Court cannot consider Humphries' first assignment of error—that the trial court erred when it deviated down from the child support guidelines and considered the minor child's Supplemental Security Income ("SSI") disability benefits an "independent financial resource"—as it presents a pure question of law.[1]

Furthermore, I would reverse the trial court's decision because under *Bennett v. Commonwealth*, 22 Va. App. 684 (1996), noncustodial parents are barred from receiving a child support credit for a disabled child's SSI income. Ignoring *Bennett*, the trial court relied instead on dicta from *Rinaldi v. Dumsick*, 32 Va. App. 330 (2000). To the extent the *Rinaldi* language is regarded as binding, I would affirm the trial court's judgment and encourage rehearing this case en banc, to resolve the tension between *Rinaldi* and *Bennett*.

---

[1] An appellate court does not sit to pass judgment on the "reasons of the court for its judgment" but simply the judgment, *see, e.g.*, *Perry v. Commonwealth*, 280 Va. 572 (2010). Our Supreme Court found a transcript was not indispensable to determine whether a motion to continue was improperly denied, because there was evidence that the motion was made, and denied, during the hearing. *Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 33 (2007). It should be noted that the record contains a transcript from the motion for reconsideration of the child support modification ruling. Furthermore, there is a record of how the trial court considered the legal issue, as well as what arguments were preserved.

Judicial dicta[2] are a court's opinion "on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision and therefore not binding even if it may later be accorded some weight." *Judicial Dictum*, *Black's Law Dictionary* (10th ed. 2014). The United States Supreme Court noted that dicta generally

> are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the Court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.

*Cohens v. Virginia*, 19 U.S. 264, 399-400 (1821). In practice, dicta may "range from binding to wholly unpersuasive." Professor Marc McAllister, *Dicta Redefined*, 47 Willamette L. Rev. 161, 162 (2011). "[W]e are not bound to follow our dicta in a prior case in which the point now at issue was not fully debated," *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006), or in which the legal rationale is erroneous, *see* McAllister, *supra*.

In *Rinaldi*, a noncustodial father sought a downward deviation of his child support obligation based on his adult disabled son's SSI benefits and part-time employment. 32 Va. App. at 332. The trial court refused to deviate down from the child support guidelines. *Id.* We affirmed, holding: "[t]he decision not to deviate from the guidelines is within the trial court's discretion and is to be determined upon . . . the totality of the circumstances in each case. We cannot say the trial court's decision was plainly wrong or without evidence to support it." *Id.* at

---

[2] Virginia distinguishes between "obiter dictum" and "judicial dictum." *See Jones v. Phillips*, 299 Va. 285, 301 (2020); *Harmon v. Peery*, 145 Va. 578, 583 (1926). Judicial "[d]icta are opinions of a judge which do not embody the resolution or determination of the court and, [are] made without argument or full consideration of the point . . . ." *Harmon*, 145 Va. at 583. But obiter dicta are even more tangential than judicial dicta. "*Obiter dicta* are such opinions uttered by the way, not upon the point or question pending, as if turning aside, from the main topic of the case to collateral subjects." *Id. Rinaldi*'s language constitutes judicial dicta.

337.  However, the *Rinaldi* panel then chose to engage in a hypothetical: *could* the trial court have deviated down from the guidelines?  Although it found that "the trial court *expressly declined* to deviate from the guidelines" and "did not make any finding . . . [that] the guidelines would be unjust or inappropriate," it theorized that the trial court "properly *could* [have] consider[ed] as an independent financial resource of the child both his SSI and his wages from part-time employment."  *Id.* at 336 (emphases added).  This tangential comment falls squarely in the definition of "judicial dictum."  This statement was not essential to our holding in *Rinaldi*, would create an inter-panel tension issue with our holding in *Bennett*, and is legally problematic.

In *Bennett*, we held that a noncustodial father was "not entitled to a credit or reduction in his child support obligation as a result of the SSI benefits the mother receive[d] for [the adult child]'s disability," because gross income under the guidelines does not include federal SSI benefits.  22 Va. App. at 695; Code § 20-108.2.  We noted that "SSI benefits received by a disabled child are intended to supplement other income, not substitute for it," when holding that a "noncustodial parent's child support obligation is not impacted by the receipt of SSI on the behalf of a disabled child."  *Bennett*, 22 Va. App. at 694-95.  This interpretation aligns with the legislative intent behind the SSI program—"that SSI benefits be paid only to the extent an individual's minimum income level is not being met from other sources."  *Bormey v. Schweiker*, 695 F.2d 164, 168 (5th Cir. 1983) (citing H.R. Rep. No. 92-231, 92d Cong., 2d Sess.); *see Weiss v. Schweiker*, 519 F. Supp. 763, 765 (S.D.N.Y. 1981).

*Bennett* expressly barred noncustodial parents from receiving a child support credit for a disabled child's SSI income under Code § 20-108.2.  Under *Rinaldi*, noncustodial parents would be allowed to circumvent *Bennett* by claiming that their disabled child's SSI income is not "gross income" under Code § 20-108.2 but, rather, an "independent financial resource" under Code § 20-108.1.  *Rinaldi*, 32 Va. App. at 336.  This distinction is artificial, inconsistent with

Congress's legislative intent surrounding the SSI program, and violative of public policy. Even *Rinaldi* recognized that "[t]here is nothing inherently unjust or inappropriate about making a father support his child, if he is able to do so, before looking to a government welfare program that is intended to supplement the resources of the needy." *Id.* at 337 (alteration in original). Effectively, *Rinaldi* would permit the exact noncustodial credit/reduction in child support that *Bennett* disallowed. And it would encourage absent parents to foist their legal obligations onto governmental programs for the needy.

Compounding the problem, the judicial dicta on which the trial court relied are legally problematic and, thus, unpersuasive. Review of the *Rinaldi* panel's opinion reveals that its dicta are based upon a cite to the Code—which does not support its claim—and an incomparable Kentucky case. In *Barker v. Hill*, 949 S.W.2d 896, 896 (Ky. Ct. App. 1997), the Kentucky court considered whether a disabled child's monthly SSI could be deducted from the father's child support obligations and held that it could. In coming to this decision, the Kentucky court stated:

> In determining whether application of the guidelines would be unjust or inappropriate, we believe that an appropriate circumstance to consider is the SSI received by the child as an independent financial resource. *Considering SSI in the child's name is consistent with considering social security benefits in the parent's gross income.*

*Id.* at 897 (emphasis added). This is because the Kentucky statute expressly includes both social security benefits *and supplemental security income* as gross income when calculating its child support guidelines award. *Id.* In other words, *Barker v. Hill* was decided this way because Kentucky sought to harmonize its interpretation of "gross income" and its interpretation of "independent financial resources."

But in Virginia, our statute states the opposite—"'[g]ross income' shall *not* include . . . [f]ederal supplemental security income benefits." Code § 20-108.2 (emphasis added).[3] Our statute is not comparable to the Kentucky statute. *Rinaldi*'s reliance on *Barker v. Hill* was thus misguided and incorrect. In fact, *Bennett* is more analogous to *Barker v. Hill* than *Rinaldi*; unlike *Rinaldi*, *Bennett* also sought to harmonize the statutes at issue.[4] Despite this, the trial court found *Rinaldi*'s distinction and incorrect reliance on Kentucky law to be binding.

Humphries and Buchanan are the divorced parents of N.B., a disabled person over the age of eighteen. Both parties stipulated that N.B. qualified for continued parental support beyond his eighteenth birthday under Code § 20-124.2. N.B. receives monthly SSI benefits of $700 per month. After hearing argument, the trial court permitted a downward deviation of Buchanan's child support obligation, due to N.B.'s SSI benefits. The trial court relied on our decisions in *Bennett* and *Rinaldi* and found that application of the standard child support guidelines would be unjust, as Humphries used part of N.B.'s SSI benefits to support herself and her children while providing full-time caregiving to N.B.

The trial court found that *Rinaldi*'s language was not dicta and would allow courts to consider the SSI benefits of a disabled child their "independent financial resources" under Code § 20-108.1. This determination undermines our prior holding in *Bennett*. *Bennett*, 22 Va. App. at 695. Although *Bennett* concerned gross income calculations and benefits received by the parent on behalf of a disabled adult child—rather than "independent financial resources" and benefits awarded directly to the disabled adult child—the distinction is nevertheless artificial. *Rinaldi* would permit different results for nearly identical financial situations. To read *Rinaldi*'s language as anything other than dicta creates inter-panel tension between *Rinaldi* and *Bennett*.

---

[3] This statutory language was identical when *Bennett* and *Rinaldi* were decided.

[4] Code §§ 20-108.1, 20-108.2.

*Rinaldi*'s language is unpersuasive judicial dictum. It is not essential to its holding, it is legally suspect, and it is inconsistent with our holding in *Bennett*. To the extent that other members of this Court would not find *Rinaldi*'s language to be dicta, this case should be heard en banc to remedy the conflict between *Rinaldi* and *Bennett*. *Rinaldi* is a published panel case. *Bennett* is a published panel case. *Rinaldi* should not be permitted to undermine *Bennett* without vetting by our Court en banc. For these reasons, I dissent in part and concur in part.